627 A.2d 814

**TREDYFFRIN–EASTTOWN SCHOOL DISTRICT, Appellant,**

v.

**VALLEY FORGE MUSIC FAIR, INC., Appellee,**

**TREDYFFRIN–EASTTOWN SCHOOL DISTRICT, Appellant,**

v.

**VALLEY FORGE MUSIC FAIR, INC., Appellee,**

**VALLEY FORGE MUSIC FAIR, INC., Appellant,**

v.

**TREDYFFRIN–EASTTOWN SCHOOL DISTRICT, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 20, 1992.

Decided June 2, 1993.

Reargument Denied Aug. 3, 1993.

Thomas A. Riley, Jr., for appellant.

Frank L. White, Jr., for appellee.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

SMITH, Judge.

Valley Forge Music Fair, Inc. (Music Fair) and Tredyffrin-Easttown School District (District) appeal from an adjudication and decree nisi dated May 24, 1989 and a final opinion and

order dated May 24, 1991 entered by the Court of Common Pleas of Chester County.[1]

## I.

On May 30, 1985, Music Fair initiated the action against the District challenging the constitutionality of the Tredyffrin–Easttown School District Amusement Tax Resolution of 1969 ("Tax Resolution") and seeking declaratory and equitable relief. In its complaint, Music Fair alleges, inter alia, that in operation and effect, the amusement tax is a gross receipts tax measured and paid on the basis of Music Fair's gross ticket sales; the amount Music Fair pays to the District averaged better than 90% to 95% of the total amusement taxes collected annually by the District; the District did not enforce the tax upon other entities and on occasion liberally compromised tax arrearages in favor of other entities; Music Fair made numerous pleas to the District for relief from this unfair, confiscatory and unjust taxing scheme; and no other business entity within the District's taxing jurisdiction is subject to a gross receipts tax.

Music Fair further alleges that in enactment and enforcement the Tax Resolution violates the Due Process Clause and the Equal Protection Clause of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution, and should be declared violative of the provisions of The Local Tax Enabling Act (Local Tax Act), Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6901–6924. The District filed a counterclaim seeking amusement taxes on dues which Music Fair collected from its patrons for membership in its Budget Ticket Club, Inner Circle Club and parking fees.

The trial court conducted a non-jury trial and found, in pertinent part, that the School District of Tredyffrin Township

1. The District filed a notice of appeal with this Court from the trial court's adjudication and decree nisi before the adjudication and decree nisi were reduced to a final judgment pursuant to Pa.R.A.P. 301. This appeal is docketed at No. 1368 C.D.1991 and is accordingly quashed as it was prematurely filed. The District and Music Fair filed timely notices of appeal from the final opinion and order which are docketed at Nos. 1405 and 1406 C.D.1991, respectively.

passed an ordinance imposing a 5% amusement tax in 1959, that Music Fair filed a complaint in equity challenging the constitutionality of the 1959 resolution, that the parties settled the matter, and that on February 16, 1960 the court approved a signed stipulation which provides: "the issues raised in plaintiffs' complaint shall not thereby be rendered res judicata and that plaintiffs, or either of them, remain free to attack the validity or constitutionality of any future amusement tax resolution of defendant School District of Tredyffrin."

In 1968, an interim operating committee was formed to serve as the vehicle under which the School District of Tredyffrin Township and the School District of Easttown Township were dismantled and the District was created. On May 12, 1969, the interim operating committee enacted the Tax Resolution which provides in pertinent part:

Section II. *Definitions*....

(a) "Admission" means the privilege of attending or engaging in an amusement....

. . . .

(i) "Producer" means any person conducting any amusement within the district, temporary or permanent.

Section III. *Imposition of Tax.* A tax at the rate of five (5%) per cent is hereby imposed, for general revenue purposes, upon the admission charges applicable to all admissions to any amusement within the district, which tax shall be paid by the person so admitted.

. . . .

Section VI. *Collection.* (a) Every producer within the district shall collect the tax imposed by this resolution and shall be liable to the district, as an agent thereof, for the payment of the same....

Section VII. *Reports.* (a) Every producer of a permanent amusement shall, on or before the tenth day of each month, ... transmit ... a report of the total admissions charged or

collected during the preceding month, and the total amount of tax due from such producer upon such admissions....

. . . .

(c) Every producer, at the time of making the reports required by this section, shall pay ... the total amount of taxes due to the district during the period for which the report is made; provided, that such person may deduct therefrom two per cent thereof, providing payment is made on or before the due date thereof....

The trial court determined that while Music Fair had complained to the District and/or the school board on numerous occasions regarding the unfair imposition of the amusement tax and was informed that the tax rate had to remain uniform for all amusements "because any adjustments to the tax made for the Music Fair necessarily would have to be made for the rest of the amusements in the District on a uniform basis," the school board was failing to enforce the Tax Resolution against some amusements and compromising the tax liabilities of other amusements. In addition, the District promptly questioned Music Fair on two occasions after it allegedly failed to remit amusement taxes, while many amusements in the District went for years without paying the tax and without the District taking any action. Finally, although the president of Music Fair heard rumors over the years that it was the only amusement being required to pay the amusement tax, it disregarded those rumors because of the representations made by the school board and the solicitor for the school board that all taxpayers must be treated uniformly.

With regard to the counterclaim, the trial court found that the Inner Circle Club entitles its members to receive advance notice of performances, choice seating at the theater, and discounts on certain performances; the now defunct Budget Ticket Club, on the other hand, entitled the member to buy tickets at discounts for those shows the Music Fair deemed as having disappointing advance sales; and Music Fair never submitted amusement taxes on fees collected for membership

in these clubs. Patrons of the Music Fair pay a $1 parking privilege fee regardless of whether the patron parks a vehicle in the parking lot, and monies collected from the parking privilege fees do not grant the patron the privilege of entering the Music Fair but are used to pay the cost of auxiliary police to direct traffic and for repair and maintenance of the lot.

The trial court concluded that the patrons, as opposed to Music Fair, are the taxpayers; the amusement tax does not in force and effect violate the Fourteenth Amendment Due Process Clause of the United States Constitution; the District has intentionally, systematically and selectively enforced the Tax Resolution in violation of the Fourteenth Amendment Equal Protection Clause of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution; Music Fair may not now challenge the reasonableness of the Tax Resolution as it failed to comply with the statutory provisions of Section 6 of the Local Tax Act, 53 P.S. § 6906; the District had no authority, pursuant to what was commonly referred to as the Sunshine Act,[2] to take formal action regarding settlement of monies due pursuant to the tax resolution at non-public meetings at which minutes were not kept; the money Music Fair collected from its Budget Ticket Club constituted "admissions" as defined by the amusement tax while the money collected from its Inner Circle Club and parking privilege fees did not; Music Fair's claims are not barred by the doctrines of res judicata, waiver or laches; and relief for back taxes is not limited to the two years prior to the filing of the instant complaint. The trial court forgave any monies Music Fair owed for Budget Ticket Club sales; ordered the District to pay 50% of the money Music Fair paid between May 25, 1977 and May 30, 1985 pursuant to the Tax Resolution into an interest-bearing account established by a trustee; and ordered the trustee to pay Music Fair's counsel fees from the trust

2. Act of June 21, 1957, P.L. 392, *formerly,* 65 P.S. §§ 261–269, repealed by Section 17 of the Act of July 3, 1986, P.L. 388. A similar act is now found in Sections 1–16 of the Sunshine Act, Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286.

fund.[3] Both parties appealed to this Court.[4]

## II.

■ Procedurally, the District argues that the trial court erred by not finding that Music Fair's claims were barred by the doctrines of res judicata and laches. The doctrine of res judicata is applicable only when four conditions have been met: identity of the thing sued upon, identity of the cause of action, identity of persons and parties to the action, and identity of the quality or capacity of the parties suing or being sued. *In re Private Road in Union Township,* 148 Pa.Commonwealth Ct. 522, 611 A.2d 1362 (1992). In the 1959 action, the "thing sued upon" was a tax resolution enacted by the School District of Tredyffrin Township. The "thing sued upon" in this action is a separate and distinct Tax Resolution which was enacted by the District. Thus, the District cannot meet the first of the four requisite conditions. Moreover, the court-approved stipulation clearly provides that Music Fair may attack the validity or constitutionality of future amusement tax resolutions.

■ The test to determine if laches applies in an equity suit is not that a certain definite time has lapsed since a cause of action accrued, but whether the complaining party is chargeable with want of due diligence in failing to institute a claim under the circumstances. *Hansel v. Hansel,* 300 Pa.Superior Ct. 548, 446 A.2d 1294 (1982). The question of whether a claim is barred by laches is factual and must be determined by an examination of the circumstances presented in a particular case. *Wilson v. King of Prussia Enterprises, Inc.,* 422 Pa. 128, 221 A.2d 123 (1966); *Jones v. Oxford School Dist.,* 3 Pa.Commonwealth Ct. 102, 281 A.2d 188 (1971).

**3.** The order further provides that a principal of any Chester County public, parochial or private high school may, during the school year, request that the trustee reimburse the cost of not more than 200 tickets for students to attend an appropriate cultural affair held by Music Fair.

**4.** This Court's scope of review of a final decree in equity is limited and a decree will not be disturbed unless it is not supported by the evidence or demonstrably capricious. *Lower Frederick Township v. Clemmer,* 518 Pa. 313, 543 A.2d 502 (1988).

The District argues that this Court should determine that Music Fair's selective enforcement claim should be barred because Music Fair's president admitted that in 1980 he believed that the District engaged in selective enforcement and had settled claims with other amusements.[5] However, the trial court determined that the District purposefully concealed "the true tax payment/tax settlement facts, and by this means successfully kept plaintiff at bay." This determination is supported by the record as the District does not challenge the trial court's finding that it misrepresented to Music Fair the facts regarding settlements with other amusements. In addition, because the settlements were not made public by being recorded in school board minutes, the District cannot argue that Music Fair could have learned of the settlements by the exercise of due diligence. Therefore, since Music Fair's delay in filing suit challenging the selective enforcement of the Tax Resolution was due to the District's efforts to conceal its unequal application of the tax, Music Fair's claim is not barred by the doctrine of laches. *See Hansel* (suit seeking to have co-executors of estate removed for mismanagement of funds was not barred by laches although filed twelve years after decedent's death, as plaintiff could not be charged with lack of diligence in prosecuting claim when co-executors prevented earlier filing by concealing their inappropriate actions).

## III.

Music Fair argues that notwithstanding the express language of the Tax Resolution, the amusement tax in application and effect is a gross receipts tax upon Music Fair and not a

5. The District also argues that this Court should look to the thirty-day time limitation set forth in The Local Tax Enabling Act (Local Tax Act), Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6901–6924, and determine that Music Fair's claims should be barred as it waited sixteen years after passage of the tax before filing suit claiming that the Tax Resolution was invalid as enacted. This Court need not rule on this argument as Music Fair has not challenged in this appeal the trial court's ruling that it did not comply with the thirty-day provision set forth in Section 6 of the Local Tax Act, 53 P.S. § 6906, and this Court has determined that Music Fair has failed to establish any constitutional deficiency in the Tax Resolution.

tax upon the patron. Music Fair maintains that because the District compromised the tax liability of other entities and allowed them to retain part of the tax for capital improvements, these compromises are proof that the tax in reality is upon the amusement producer.

The nature of the tax is determined by the language of the resolution, *Moon Schools Union School District v. Tiglio*, 183 Pa.Superior Ct. 67, 128 A.2d 150 (1956), and the intention of the legislative body, *Clearview Bowling Center, Inc. v. Hanover Borough*, 430 Pa. 579, 244 A.2d 20 (1968). Further, the fact that the tax collector may compute the amount which should have been collected from the person paying the admission by taking a percentage of the producer's gross receipts upon the producer's failure to file a return does not render the tax a gross receipts tax. *Moon Schools Union School Dist.* Nor does the fact that the producer may retain 2% of the amount due as compensation for computing, reporting and timely paying the amusement tax change the nature of the tax. *Id.* Moreover, the Pennsylvania Supreme Court has repeatedly held that similar amusement tax resolutions provide that one conducting an amusement merely collects the tax and is not the intended or true taxpayer. *See Clearview Bowling Center; Swatara Township v. Automatic Bowling Centre, Inc.*, 419 Pa. 482, 214 A.2d 725 (1965), and *Plymouth Lanes, Inc. v. Plymouth Township*, 415 Pa. 206, 202 A.2d 811 (1964).

Music Fair cites no authority to support its position that selective enforcement of an amusement tax renders the nature of the tax a gross receipts tax; or its arguments that the amusement tax is not imposed upon the patron because the patron does not suffer liability for failure to pay the tax, and that the District's actions in hiring a separate tax collector to enforce the ordinance indicates that Music Fair is the actual taxpayer. Contrariwise, Music Fair's cases establish that the Court must consider the nature and effect of the tax in order to determine its validity when challenged as being excessive and unreasonable; and a producer who has a direct and substantial interest in a local tax statute, the burden of which initially falls upon the patron, has a sufficient immediate

interest to provide standing to challenge the tax. *See Alleghe-ny County v. Monzo,* 509 Pa. 26, 500 A.2d 1096 (1985); *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975); *Alco Parking Corp. v. Pittsburgh,* 453 Pa. 245, 307 A.2d 851 (1973), *reversed on other grounds,* 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974). Furthermore, the underlying tax in *Alco Parking Corp.,* is a gross receipts tax and the identity of the taxpayer was not at issue.

Accordingly, since the resolution clearly indicates that the amusement tax is intended to be a tax upon the patron and that the producer merely collects and tenders the money to the District, and since any selective enforcement of the tax did not alter the nature of the tax or the party taxed, the trial court's determination that the patron is the taxpayer must be affirmed.[6]

## IV.

With respect to the remaining constitutional claims, it is well settled that tax enactments are presumed constitutionally valid and the burden of proving invalidity is upon the person challenging the tax. *Monzo.* In order to determine the validity of a tax, the court must consider the nature and effect of the measure. *Id.* A state's taxing power is subject to the constitutional restraints of the Fourteenth Amendment to the United States Constitution. *Airway Arms, Inc. v. Moon Area School Dist.,* 498 Pa. 286, 446 A.2d 234 (1982), *appeal dismissed sub nom. Grant–Oliver Corp. v. Moon Area School Dist.,* 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983). Furthermore, the Commonwealth and its political subdivisions are subject to the requirements of equal protection and uniformity in the exercise of taxing powers. *Alco Parking Corp.* In *Monzo,* the Pennsylvania Supreme court reaffirmed the principle that "if the result of a taxing scheme

6. In addition, because this Court has ruled that the tax is not a gross receipts tax and that the taxpayer is the patron and not the Music Fair, its arguments that the District violated the Equal Protection Clause of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution by imposing upon it a gross receipts tax and that it is the party entitled to the refund must also fail.

is the imposition of substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional." 509 Pa. at 38, 500 A.2d at 1102.

In the matter sub judice, the Tax Resolution uniformly taxed all patrons of amusements the 5% rate. Thus, the legislative scheme of the Tax Resolution does not unconstitutionally discriminate against Music Fair or against any one taxpayer who is subject to the tax. Moreover, Music Fair has not indicated any abuse of legislative function with respect to enacting the Tax Resolution which would support its due process argument. On the contrary, the only improper action which Music Fair has established was the District's actions regarding enforcement of the tax.

■ Music Fair had the burden to prove deliberate and purposeful discrimination in enforcement of the Tax Resolution. *See Commonwealth v. Koppers Co., Inc.*, 397 Pa. 523, 156 A.2d 328 (1959), *appeal dismissed,* 364 U.S. 286, 81 S.Ct. 43, 5 L.Ed.2d 38 (1960). To establish a denial of equal protection in the application of a tax statute, there should be something that amounts to an intention, or the equivalent of fraudulent purpose, to disregard the fundamental principle of uniformity. *Fisher Controls Co., Inc. v. Commonwealth,* 476 Pa. 119, 381 A.2d 1253 (1977). Such discrimination can be demonstrated by showing systematic unequal enforcement of a tax statute. *Commonwealth v. Molycorp, Inc.,* 481 Pa. 208, 392 A.2d 321 (1978).

■ The trial court made extensive findings regarding the communications other amusements had with the District, the status of their payment or non-payment of the tax, the District's action or inaction in attempting to collect payment of the tax, and any settlements the District made concerning the amounts due. The court noted that other amusements refused to pay the tax for months and years before the District demanded payment and that the District systematically accepted tax payments from other amusements based on unaudited figures or records, while the District promptly contacted Music Fair within weeks of alleged non-payments and audited

Music Fair's books and records. The trial court concluded that the District's "selective collection and audit procedures, its policy of making covert settlements in violation of the Sunshine Law, its contravention of the fees, interest and penalty clauses of the [Tax Resolution], and above all, its repeated misrepresentations to [Music Fair] regarding these matters" sufficiently proved a fraudulent purpose. Trial Court Opinion, p. 30.

Section 21 of the Local Tax Act, 53 P.S. § 6921, clearly permits the District to collect unpaid taxes by suit in assumpsit. *See Earl Realty, Inc. v. Conestoga Valley School Dist.,* 44 Pa.Commonwealth Ct. 266, 403 A.2d 232 (1979). The District cites Section 21 and argues that its right to enforce the Tax Resolution is an assumpsit claim and therefore the cases cited by the trial court and Music Fair dealing with selective enforcement of a tax are inapposite. To allow the District to skirt the constitutional prohibition against selective enforcement by allowing it to summarily characterize all taxes due as assumpsit claims and then selectively settle those claims with certain amusements while insisting on timely payment in full from Music Fair would serve a grave injustice. Thus, the filing of an assumpsit action to enforce the tax is merely a method available to force compliance and does not relieve the District from the constitutional mandate that taxes must be enforced uniformly. Moreover, as to Music Fair's alleged voluntary payments to the District, the trial court noted, "[i]f payment is to be made only by those who accept the act it would not be uniform, as the tax would be imposed on some members of a group without a corresponding imposition on other members of the same group." *Rich Hill Coal Co. v. Bashore,* 334 Pa. 449, 498–99, 7 A.2d 302, 323 (1939).

The District also argues that Music Fair did not meet its heavy burden of proving selective enforcement. The District ignores the trial court's findings that prior to commencement of the instant action, Music Fair requested tax relief, was told that the District could not grant relief to just one amusement, and then substantially compromised relief for other amusements based upon unaudited figures. The District argues that

it established that it intended to enforce collection and in fact collected approximately 83% of the taxes due for the time frame in which the trial court granted relief;[7] that as long as it intended to enforce collection, there is no violation of the uniformity clause even if one or two taxpayers in the class managed to totally escape tax liability; and that no purposeful discrimination can arise where unequal tax treatment arises over deductions given to two taxpayers as part of out-of-court settlements. *Commonwealth v. Westinghouse Electric Corp.*, 478 Pa. 164, 386 A.2d 491, *appeal dismissed*, 439 U.S. 805, 99 S.Ct. 61, 58 L.Ed.2d 97 (1978); *Commonwealth v. Brink's, Inc.*, 346 Pa. 296, 30 A.2d 128 (1943).

However, this is not a case where the basis for non-uniformity was that one or two taxpayers totally escaped liability despite reasonable efforts to collect the tax, *Brink's*, or that the District properly settled litigation out of court after attempting to collect the tax in a uniform manner. *See Westinghouse Electric Corp.* As the trial court stated, the District's actions with respect to tax collection from amusements other than Music Fair "can hardly be termed an 'effort' at tax collection," and the District secretly settled claims for liability for some amusements while telling Music Fair that compromise was not possible as the tax had to be applied uniformly. Clearly, Music Fair established systematic unequal enforcement of the Tax Resolution in violation of the Equal Protection Clause of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution. *See Molycorp Inc.*

 The District also challenges the trial court's finding that the District's closed meetings at which amusement tax claims were settled constituted formal action and were in direct violation of the the Sunshine Act. Section 2 of the Sunshine Act, 65 P.S. § 262, as it existed at the time of the

7. It is not necessary that the court limit itself to the time frame for which it can grant damages in order to determine discriminatory enforcement. On the contrary, the court can reach that determination by considering time periods prior and subsequent to the alleged illegal evaluation. *Sunday Lake Iron Co. v. Wakefield Township*, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918).

meetings, provided that all meetings of agencies at which formal action is scheduled or taken, must be open to the public.

The District, while an agency of the Commonwealth, is not an "agency" as defined in and for purposes of the Sunshine Act. *See Paterra v. Charleroi Area School Dist.*, 22 Pa.Commonwealth Ct. 451, 349 A.2d 813 (1975). Consequently, school board members are necessary parties in a suit brought against the School District challenging actions of the school board as being in violation of the Sunshine Act. *Id.* Accordingly, as the school board members were not a party to this suit, it was error for the trial court to determine whether the school board violated the Sunshine Act. *See id.*

## V.

With respect to the remaining claims, Music Fair argues that the money it collected from its Budget Ticket Club does not constitute "admissions" under the Tax Resolution as the fee charged does not relate to the ticket price. The District argues that fees paid for membership in the Inner Circle Club, Budget Ticket Club and parking are subject to the amusement tax. The District also argues that the trial court erred in awarding a refund as taxes may be recovered only by filing a verified claim and suit if the refund is refused, in ordering it to return 50% of eight years of tax receipts as there is a mandatory two-year cap on refunds of taxes, in ordering a 50% refund as there is no basis in fact for such a refund, and in awarding attorney's fees.

## A.

■ The Tax Resolution provides that an admission is the privilege of attending an amusement. Thus, any monies collected by Music Fair for the privilege of attending a show is an admission. In *Fischer's Pool Swimming Club v. Towamencin Township*, 87 Pa.D. & C. 157 (1953), annual membership dues and individual admission fees to a swim club were deemed to be admissions. The trial court determined that the

membership dues in the Budget Ticket Club were identical to those in *Fischer's Pool* as the principle monetary purpose of the dues was to offset the lower admission price paid at the time of the show. However, the monetary purpose of the Inner Circle Club includes advance notice of coming attractions, choice seating through early selection, and a one or two dollar discount on mid-week shows. The trial court reasoned that since the lower ticket price on mid-week tickets is merely incidental to the main purpose of the club, and since membership in the club results in ticket sales at the price paid by the public, dues from the Inner Circle Club are distinguishable from those paid for membership in the Budget Ticket Club and in *Fischer's Pool* and are, therefore, not subject to the amusement tax.

Upon review, this Court finds no basis to support Music Fair's contention that the primary purpose of membership in the Budget Ticket Club was for a reason other than reduced ticket prices; and no basis to support the District's argument that the primary purpose of membership fees in the Inner Circle Club related to ticket prices or that the allocation of $1 as a fee for parking was artificial. *Compare Whitehall Township v. Male,* 77 Pa.D. & C. 133 (1950) (operator of an outdoor drive-in theater cannot label admissions to movie as a charge for the privilege of parking in order to avoid an amusement tax).

## B.

The trial court determined that Music Fair was entitled to relief because the District violated its right to equal protection under the Fourteenth Amendment of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution, *see Molycorp Inc.,* and therefore the District was not legally entitled to the tax monies Music Fair remitted pursuant to the Tax Resolution. *See also Iowa–Des Moines Nat'l Bank v. Bennett,* 284 U.S. 239, 52 S.Ct. 133, 76 L.Ed. 265 (1931) (when rights to equal treatment are violated, the party is entitled to obtain a refund of the excess of taxes exacted from them). The trial judge noted that as chancellor in equity, he was bound to do what was fair and just under the

circumstances; reasoned that if he were to grant the refund directly to Music Fair, it would receive a windfall as it was not the taxpayer; and ordered that the District refund the excess taxes paid by Music Fair within eight years of the filing of the action and that the funds be placed in the trust because by making the funds available for the further education of children, the intent of the Tax Resolution is realized. The trial court also determined that fair and just relief required disregarding the $75,685, plus interest and penalties, that Music Fair owed pursuant to its Budget Ticket Club sales.

At the time this suit commenced, Section 1 of the Act of May 21, 1943, P.L. 349, *as amended,* 72 P.S. § 5566b provided that when a political subdivision is not legally entitled to taxes paid by any person or corporation, that party is entitled to a refund upon the filing a written and verified claim for a refund within two years of the payment. Section 2 of the Act, 72 P.S. § 5566c, provided that the aggrieved party could bring an assumpsit action against the authorities of the political subdivision if their request for a refund was refused.

The District argues that the award should not have been granted as Music Fair did not file a verified claim and the remedy exceeds the two-year cap provided in 72 P.S. § 5566b. When the statutory remedy is inadequate, however, equity will afford relief. *Borough of Green Tree v. Board of Property Assessments, Appeals & Review,* 459 Pa. 268, 328 A.2d 819 (1974). Furthermore, a party may challenge the constitutionality of a local tax ordinance by an action in equity and is not limited to filing an action for a refund. *See Wm. Penn Parking Garage.*

The eight-year time frame for which the trial court awarded partial refund encompassed the time from which the trial court was able to document the District's first written acknowledgement that Music Fair requested and was denied relief, and the amount of the award was calculated by comparing the aggregate amount that the other amusements paid and forgiving the amount that Music Fair owed. Therefore, the trial court's award was based on evidence in the record and will not be disturbed as the District has not argued it is

demonstrably capricious. *See Lower Frederick Township v. Clemmer*, 518 Pa. 313, 543 A.2d 502 (1988).[8]

Accordingly, the May 24, 1991 order of the trial court is reversed to the extent that it found a violation of the Sunshine Act, and is affirmed in all other respects.

## ORDER

AND NOW, this 2nd day of June, 1993, Tredyffrin–Easttown School District's appeal filed at No. 1368 C.D.1991 is hereby quashed; and the final order of the Court of Common Pleas of Chester County entered May 24, 1991 is reversed to the extent that it found a violation of the Sunshine Act and is affirmed in all other respects.

---

**8.** With respect to the grant of attorney fees, the District argues that absent an agreement or statutory allowance, each party must pay its own attorney fees. *Corace v. Balint*, 418 Pa. 262, 210 A.2d 882 (1965). The District further argues that the trial court erroneously relied upon 42 Pa.C.S. § 2503(9) when it awarded attorney fees as that section is limited to conduct after litigation is commenced and attorney fees cannot be based on pre-litigation conduct. A trial court sitting in equity possesses broad powers in fashioning the relief that justice and good conscience dictate. *Weissman v. Weissman*, 384 Pa. 480, 121 A.2d 100 (1956).