TEAMSTERS, CHAUFFEURS, WARE-HOUSEMEN AND HELPERS, LOCAL 764, Plaintiff,

v.

Charles GREENAWALT, et al., Defendants,

v.

Donald E. DEIVERT, Third Party Defendant.

No. 4:CV-93-1992.

United States District Court, M.D. Pennsylvania.

March 21, 1996.

---

Robert M. Baptiste, Christy Concannon, Baptiste & Wilder, P.C., Washington, DC, John J. Dunn, Sr., Law Office of John J. Dunn, Sr., Scranton, PA, for plaintiff.

Ira H. Weintock, Wendy Dullea Bowie, Ira H. Weinstock, P.C., Harrisburg, PA, for defendants Ira H. Weinstock and Ira H. Weinstock, P.C.

Paul J. Dellasega, Thomas, Thomas & Hafer, Harrisburg, PA, for defendant Charles Greenawalt.

Thomas H. Kohn, Sagot, Jennings & Sigmond, Philadelphia, PA, for third-party defendant Donald E. Deivert.

## *MEMORANDUM*

McCLURE, District Judge.

## BACKGROUND

This action arises under section 501 of the Labor Management Reporting and Disclo-

sure Act of 1959 (LMRDA)[1] and state common law. Plaintiff challenges the receipt by Charles Greenawalt, former President of Teamsters, Chauffeurs, Warehousemen and Helpers, Local 764 (Local 764 or the union) of "severance pay" which they allege to be improper and in violation of union bylaws. Plaintiff also challenges the conduct of former union counsel, Ira Weinstock, Esq., whom it alleges advised the union that the transfer and the manner in which it ·was carried out were proper. Plaintiff seeks the return of $11,989.00 for cash and property allegedly improperly given to Greenawalt as "severance pay" based upon the improper and incorrect advice of Weinstock.

Plaintiff alleges that defendants violated Local 764 bylaws in several respects. According to plaintiff's allegations, unlike any union officer or agent who preceded him at Local 764, defendant Greenawalt received what was denominated "severance pay" in the form of an automobile. The automobile which plaintiff received was the one assigned to him for his use during his tenure as president of Local 764. After plaintiff questioned the propriety of the transfer, defendants Greenawalt and Weinstock arranged to effect the transfer by estimating the market value of the automobile, having the union give Greenawalt a check for that amount, plus transfer taxes and federal, state and local tax on the amount he received. Greenawalt then paid the union for the estimated value of the vehicle. There was no mention of the cash transaction in the Executive Board minutes, nor was it ever approved by the Executive Board or the union membership.

Plaintiff alleges that this transfer was a violation of section 15(c) of Local 764's bylaws which provide that "in such instances where the Local union provides an automobile [to a union representative or officer], title to the automobile shall remain at all times in the name of the Local Union."[2]

They also allege the violation of section 15(d) of the local bylaws, which state that the Local Executive Board may provide benefits for the officers, but that "any such benefit adopted by the Executive Board shall be specifically set forth in the Minutes of the Executive Board meetings." According to plaintiff, "Greenawalt's severance pay was not approved by the Board or reflected in the Executive Board meeting minutes." Plaintiff also challenges the valuation placed on the automobile transferred to Greenawalt as unrealistically low.

In a letter dated December 27, 1991 prepared by union counsel, Local 764 informed Greenawalt that the transaction was a violation of the local bylaws, had been found to be so in other cases, and characterized the entire transaction as an attempt to defraud union officers and the membership.

Plaintiff brought this action alleging: 1) breach of fiduciary duties under LMRDA section 501 (Count I); 2) common law conversion (Count II); 3) fraudulent misrepresentation based upon representations made by defendants to the Union Executive Board (Count III); and 4) legal malpractice (Count IV).

Plaintiff's complaint was accompanied by a verified application for leave to proceed under section 501 of LMRDA. In an order dated May 23, 1994,[3] this court denied plaintiff's application on the merits as to the union members and denied the request as moot as to the union. The court found that no prior approval was required from this court to permit the union to proceed with the claims asserted.[4] That ruling was made *ex parte* before the defendants were served.

Defendants subsequently challenged that ruling in a Rule 12(b) motion to dismiss.[5] Defendants asserted that the union lacks standing to bring this action under section 501 of LMRDA. We denied the motion and found, contrary to defendants' assertions,

---

1. 29 U.S.C. §§ 401–531.

2. Plaintiffs indicate that this is a standard bylaw provision recommended for inclusion by the international union.

3. Record document no. 5.

4. The union members' application for leave to proceed under section 501 was denied on the basis of the pendency of the union's claim.

5. Record document no. 3.

that this court has jurisdiction over the union's claim under section 501.

Presently before the court are 1) a joint motion for summary judgment filed by defendants Greenawalt and Weinstock (record document no. 63); and 2) a motion for summary judgment in his favor filed by third party defendant Deivert (record document no. 79).

For the reasons which follow, we will enter an order granting both motions.

## DISCUSSION

### Summary judgment standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 323 and 325, 106 S.Ct. at 2552–53, 2554.

Issues of fact are " 'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 693–94 (3d Cir.1988), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

### Section 501 standing

Third party defendant Deivert seeks summary judgment in his favor on the claims asserted against him by defendants Greenawalt and Weinstock for contribution and/or indemnification for alleged breaches of his fiduciary duty under section 501.

Deivert argues that defendants lack standing to file such claims because they are not members of any group or class upon whom section 501(a) confers the right to bring an action. We agree with Deivert's argument.

Section 501(a) imposes upon the officers of all labor organizations a duty to hold the organization's money and property "solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws." 29 U.S.C. § 501(a). If a union official "profits personally through the use or receipt of union funds, ... the official bears the burden of proving that the transaction was validly authorized in accordance with the union's constitution and bylaws after adequate disclosure, and that it does not exceed a fair range of reasonableness." *Brink v. DaLesio,* 667 F.2d 420, 424 (4th Cir.1981), citing *Morrissey v. Curran,* 650 F.2d 1267, 1274–75 (2d Cir.1981).

Remedies and rights for the violation of section 501(a) are set forth in section 501(b). Section 501(b) specifically authorizes only union members to sue in federal court for the alleged violation of section 501(a). The right to do so is, however, made dependent upon

plaintiff union members: 1) establishing that they sought to have the labor organization bring an action or recover damages or perform an accounting or obtain other appropriate relief, but the request was refused; and 2) obtaining leave of the court "upon verified application and for good cause shown." 29 U.S.C. § 501(b).[6]

■ If the union seeks to sue, it does not require leave of court, but may sue on its own initiative without first obtaining leave or relying upon section 501(b). *Building Material and Dump Truck Drivers, Local 420 v. Traweek,* (*Traweek*), 867 F.2d 500, 506 (9th Cir.1989).

■ When individual union members sue under section 501, they are suing derivatively " 'for the benefit of the labor organization.' " *Nellis v. Air Line Pilots Association,* 815 F.Supp. 1522 (E.D.Va.1993), citing 29 U.S.C. § 501(b). See also: *Traweek,* 867 F.2d at 506 (Plaintiff in section 501 suit "acts in a representative capacity for the benefit of the union and on behalf of the union.")

The union is clearly a member of the class for whose special benefit section 501 was enacted. Congress plainly intended section 501 to confer a right and a remedy on affected parties. A right of enforcement on the part of the union is consistent with the legislative scheme.

The same cannot be said, however, of non-union members or former union officials. These individuals are not among those upon whom section 501 specifically confers a right of enforcement, and it is not the province of this court to expand those classes beyond those which Congress saw fit to include.

Defendant Greenwalt was formerly a member of Teamsters Local 764, but is no longer. He resigned his membership when he resigned from his union office. Defendant Weinstock and his law firm, Ira Weinstock, P.C., are not presently, and never have been, members of Teamsters Local 764. Therefore, none of the defendants has standing to bring an action under section 501.

■ Further, the nature of the relief which defendants seek is not expressly authorized by section 501. Defendants assert claims for contribution or indemnity. Neither is expressly referenced as being among the claims for which a section 501 action may be filed. In addition, as we discussed above, section 501 actions inure to the benefit of the union. Their purpose is to afford a vehicle for the recovery of property or funds of which the union, and by inference, union members, were wrongfully deprived by breaches of fiduciary duty. Permitting claims of contribution or indemnity to be asserted by alleged violators of section 501 is not a logical extension of that purpose. To find that it exists, we would, therefore, require express mention of the same in the statute itself.

Deivert's motion to dismiss the third party claims asserted against him will, therefore, be granted.

**Laches**

■ Defendants argue that the claims asserted by plaintiff are time-barred under the doctrine of laches. The federal doctrine of laches governs actions filed under section 501 of LMRDA against union officers demanding an accounting. Such actions are equitable in nature, the court held in *Yablonski v. United Mine Workers,* 80 L.R.R.M. (BNA) 2594 (D.D.C.1972) (1972 WL 810), making application of laches appropriate.

■ "Laches is an equitable defense which provides that if a plaintiff in equity has failed to exercise due diligence in prosecuting his claim, to the detriment of the other party, the claim is barred." *Morris v. Scardelletti,* 147 L.R.R.M. (BNA) 2975, 2981, 1994 WL 675461 (E.D.Pa.1994). See also: *Hansel v.*

---

6. In our prior order, we denied the union members' petition for leave to proceed under section 501(a) on the basis of the pendency of the union's claim for the same cause of action. We note here that were it not for the joinder of the union in the same case, we would have found all prerequisites satisfied and would have allowed the union members to proceed with this action.

Some courts have taken the view that joinder of the union and its members as plaintiffs in the same section 501(a) action is proper. Although we declined to adopt that approach in this action, we agree that it is not improper.

*Hansel,* 300 Pa.Super. 548, 446 A.2d 1294 (1982).

▌ Whether laches applies is a factual question. *Leedom v. Thomas,* 473 Pa. 193, 373 A.2d 1329 (1977). "Application of the doctrine of laches calls for consideration of all the circumstances involved, including an examination of the entire record, in addition to the complaint." *Hansel,* 446 A.2d at 1298, citing *Larrecq v. Van Orden,* 21 Pa.Cmwlth. 623; 346 A.2d 922 (1975).

▌ The issue is whether the plaintiff is chargeable with want of due diligence in failing to file or prosecute the claim. *Hansel,* 446 A.2d at 1299. See also: *Tredyffrin–Easttown School District v. Valley–Forge Music Fair, Inc.,* 156 Pa.Cmwlth. 178, 627 A.2d 814 (1993), *alloc. denied,* 538 Pa. 638, 647 A.2d 513 (1994).

In determining whether a party exercised due diligence, the courts focus on what the party reasonably should have known, using the means of investigation within his reach with the vigilance which the law requires, not upon what he or she actually knew. *Sprague v. Casey,* 520 Pa. 38, 46, 550 A.2d 184 (1988). See also: *Dreischalick v. Dalkon Shield Claimants Trust,* 845 F.Supp. 310, 315–16 (W.D.Pa.1994).

▌ The party asserting laches bears the burden of proving that it applies, unless the analogous statute of limitations has expired. In that case, the burden is on the claimant to show why his or her claim is not time-barred. *Wheeler v. Nationwide Mutual Insurance Co.,* 749 F.Supp. 660, 662 (E.D.Pa.1990).

### Cause of action accrual date

▌ A cause of action accrues when "a party has a legal right to institute suit and can maintain a successful action." *ITG, Inc. v. Price Waterhouse,* 697 F.Supp. 867, 870–71 (E.D.Pa.1988) (citing *Kapil v. Association of Pennsylvania State College and University Faculties,* 504 Pa. 92, 470 A.2d 482 (1983)).

▌ A cause of action accrues under Pennsylvania law and the limitations period begins to run when " 'the plaintiff knows, or reasonably should know, 1) that he has been injured, and 2) that his injury has been caused by another party's conduct.' " *Bohus v. Beloff,* 950 F.2d 919, 924 (3d Cir.1991), quoting *Cathcart v. Keene Indus. Insulation,* 324 Pa.Super. 123, 471 A.2d 493, 500 (1984). See also: *Gurfein v. Sovereign Group,* 826 F.Supp. 890, 918 (E.D.Pa.1993).

▌ Although Pennsylvania recognizes the discovery rule, the start date is determined by what was known by the plaintiff or "through the exercise of diligence, knowable to" him, not by his actual knowledge. *Bohus,* 950 F.2d at 925. Thus, the critical issue for statute of limitations purposes becomes when the plaintiff knew or, through the exercise of reasonable diligence, should have known of the injury inflicted upon him or her and the cause of the injury. *Id.* See also: *Resolution Trust Corp. v. Farmer,* 865 F.Supp. 1143 (E.D.Pa.1994).

### Analogous statute of limitations

▌ LMRDA does not contain an express statute of limitations. We are, therefore, required to look elsewhere for a limitations period applicable to comparable claims at law so that we can determine where the burden of establishing laches falls. It would seem that the common law claim most analogous to the claims asserted here is breach of fiduciary duty. The Pennsylvania limitation period for such claims is two years, 42 Pa. Con.Stat.Ann § 5524(7). *Novodzelsky v. Astor Weiss & Newman,* 1994 WL 527281 at *1, 1994 (E.D.Pa.1994) and *Kelley v. Tupitza,* 1993 WL 441773 at *3, (E.D.Pa.1993).

### Accrual date of plaintiff's claims

The allegedly wrongful act, i.e. transfer of ownership of the automobile to Greenawalt, occurred more than two years prior to the filing of this action, placing on the plaintiff the burden of demonstrating why its section 501 claim should not be barred by laches.

▌ Plaintiff argues that the limitations/laches period was tolled by defendants' acts of fraudulent concealment. The "doctrine [of fraudulent concealment] tolls the statute of limitations where "through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry." *Ciccarelli v. Carey*

*Can. Mines, Ltd,* 757 F.2d 548, 556 (3d Cir. 1985).

 Although fraudulent concealment may be intentional or unintentional, "mere mistake, misunderstanding, or lack of knowledge is insufficient" to establish tolling of the statute on grounds of fraudulent concealment. *Bohus,* 950 F.2d at 926. See also: *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 204 A.2d 473 (1964). There must be some affirmative and independent act of concealment that misled the plaintiff or prevented him from discovering his injury. *Gee v. CBS, Inc.,* 471 F.Supp. 600, 623 (E.D.Pa.), *aff'd,* 612 F.2d 572 (3d Cir.1979).

 If the cause of action was fraudulently concealed from the plaintiff, the statute of limitations is not nullified altogether as a defense. Rather, the limitations period is tolled until "the effects of the fraud have been nullified by knowledge to the plaintiff." *Urland v. Merrell–Dow Pharmaceuticals, Inc.,* 822 F.2d 1268, 1273 (3d Cir.1987). "No Pennsylvania case suggests that the reasonable diligence standard applied to the tolling of the statute of limitations for purposes of the discovery rule is not also applicable when the plaintiff relies on fraudulent concealment for tolling." *Id.*

We need to examine the chronology of relevant events to determine whether the statute was tolled for a time.

### Chronological list of relevant events

Events relevant to plaintiff's section claim under section 501 occurred on the following dates: [7]

2/10/91 Greenwalt announces plans to retire from the union presidency.

3/91 The union contacted its accountant, Neal Lewis, about the contemplated transfer of the vehicle to Greenawalt.

3/91 Lewis advised the union to have the car appraised and stated that once he had the appraised value, he would calculate the tax on the transfer.

3/91 Pursuant to Lewis' request, the union (or Greenawalt) obtained an appraised value from a local car dealer.[8]

4/14/91 Union Executive Board meeting prior to which the union was advised by Attorney Weinstock that the proposed transfer of the vehicle to Greenawalt is legal provided it is reflected in the union minutes and approved by the body.

4/14/91 During Union Executive Board meeting, a phone call is placed to Attorney Weinstock for assistance in framing the motion authorizing transfer of the vehicle.

4/14/91 Board minutes for the meeting held this date provided that an agreement was signed by Greenawalt and the union whereby he agreed that in exchange for receipt of the car, he would provide up to 555 hours of service to the union after his retirement and further provided that the union would pay all taxes and costs associated with transfer of the vehicle.

4/29/91 [9] The union issues a check to Greenawalt in the amount of the appraised value of the vehicle.

4/29/91 Greenawalt endorses the check back to the union.

5/1/91 Greenawalt retires. Title to the vehicle is transferred to Greenawalt.

5/19/91 Union Executive Board meeting at which the financial report including the April, 1991 check made payable to Greenawalt and recorded as severance pay is read into the record and approved.

5/1/91 to

9/91 Greenawalt performs services for the union.

---

**7.** The facts related here are undisputed and are taken either from the pleadings or from the statements of material fact filed in conjunction with the pending motions. (See: (record document nos. 64 and 88). Some of the facts stated are taken from statements of which portions are disputed. In such cases, only what appeared to the court to be the undisputed portions are included, unless we indicate otherwise.

**8.** The parties dispute the propriety of and some of the circumstances surrounding the appraisal, but not the month when it was given.

**9.** This event occurred on either April 29, 1991 or April 30, 1991; the parties are unclear on the exact date.

9/91 Documents relating to the vehicle transfer are sent to union attorney Robert Baptiste, Esq., for his review.[10]

12/27/91 Attorney Baptiste sends Greenawalt a letter in which he states that the union has decided to rescind the transaction and demands full restitution.

12/30/91 Greenawalt telephones Attorney Baptiste in response to the letter.

1/92 Greenawalt telephones Attorney Baptiste on several occasions seeking information or some resolution to the dispute.

1/5/92 Greenawalt parks the vehicle in the union parking lot, but fails to turn over the keys.[11]

7/92 Baptiste sends documents to the union in July, 1992 regarding the filing of a legal action challenging the legality of the vehicle transfer.

7/10/92 Receipt of documents from Baptiste by the union is reflected in union minutes for a meeting held this date.

8/14/92 Union's officers have reviewed the documents forwarded to them by Attorney Baptiste and authorized him to proceed with the filing of an action against Greenawalt as reflected in union minutes for meeting held this date.

12/22/93 Action filed against Greenawalt and Weinstock.

 It is apparent from the facts recited above that union officials were aware of at least the possibility of some impropriety or questionable aspects of the vehicle transfer by September, 1991, at the latest. That month, they raised the question with their attorney and had him review transaction documents. Although the union disputes whether the attorney had the benefit of all relevant documents as of that date, that does not alter the fact that by raising the question the union clearly had concerns about the propriety of the transaction and the legal advice

which they received from Weinstock declaring it proper.

Even if we concede that information may have been concealed from plaintiff or that it may have been misled by those in power when the transfer occurred, undisputed facts indicate that those who succeeded Greenawalt suspected wrongdoing at least as early as September, 1991, well within the two-year period applicable if this action were governed by a statute of limitations.

Despite harboring such suspicions only five months after the transfer, no legal action was filed until more than two years thereafter and nearly two years and nine months after the May 1, 1991 date of transfer. Consequently, plaintiff bears the burden of demonstrating why its section 501 claim should not be barred on grounds of laches.

Plaintiff offers no explanation for the delay. Attorney Baptiste demanded restitution from Greenawalt in a letter dated December 31, 1991. Apparently, he had had an opportunity by that time to review the relevant information and conclude that the transaction was improper. He would not, otherwise, have had any legitimate basis for demanding restitution. It must or should have been apparent to Baptiste and to the union not long thereafter that the restitution they wanted would not be forthcoming. They knew then everything they needed to know to justify filing a legal action against Greenawalt. Despite such knowledge, there was an unexplained delay of six months before documents were forwarded to the union to initiate a lawsuit.

Then there was yet another unexplained delay of five months, before this action was filed. Plaintiffs offer no explanation for the repeated delays. Not only did it have the necessary information, it also knew or believed that Greenawalt and Weinstock had violated union rules in authorizing transfer of the vehicle, long before this action was filed

---

**10.** There is some dispute about precisely when Attorney Baptiste began his review of the transaction and when he received all relevant documents pertaining to the transaction.

**11.** There is some dispute about whether the keys were ever given back, and the record is unclear as to what eventually happened to the car. De-

fendants state, in their statement of material facts, that Greenawalt was later ordered by the union to remove the car from its property. (Record document no. 62, ¶ 60). Plaintiff does not concede this point.

The date when the car was placed in the union lot, however, appears not to be in dispute.

and well before the two year statute of limitations would have expired were this action governed by the latter.

Plaintiff has not sustained its burden of proving that it did not "inexcusably or unreasonably delay in pursuing this claim." *Gall v. United States Steel Corp.*, 598 F.Supp. 769 (W.D.Pa.1984). There are many unexplained delays in the sequence of events which we find both inexcusable and unreasonable. The matters at issue were in no way complicated by, e.g., complexity of the law, inability to ascertain relevant facts, etc. The facts are straightforward. The car was transferred to Greenawalt as a form of compensation or severance pay. A certain value was assigned to the car on the corporate books. The transaction was carried out by having the union issue a check payable to Greenawalt which he then endorsed back to the union. Title to the car was then transferred from the union to Greenawalt and he assumed possession of the same. All of these facts were known to the union from the start. Nothing was concealed. The only question was the legality of the transfer under union bylaws.

The legal issues were equally straightforward. As we just stated, the only legal question was whether the transfer was consistent with union rules and regulations—not a complex question.

Taken together, all of these circumstances firmly convince us that plaintiff unreasonably and unjustifiably waited too long to file this action. Since plaintiff has failed to satisfy the first prong of the two prong test, *Gall,* 598 F.Supp. at 773, we need not reach the second prong and do not consider whether defendant was unfairly prejudiced by the delay.

**Statute of limitations on plaintiff's state law claims**

Pennsylvania's two year statute of limitations for claims of tort and fraud applies to plaintiff's common law claims of conversion, legal malpractice and fraudulent misrepresentation. 42 Pa.Cons.Stat.Ann. § 5524. As we discussed above, all of the claims asserted by plaintiffs accrued more than two years prior to the filing of this action, rendering all of them time-barred.

Defendants' motion for summary judgment on the state law claims will be granted on that ground.