SHIPPENVILLE–ELK TOWNSHIP
VOLUNTEER FIRE
DEPARTMENT

v.

LADIES AUXILIARY OF the SHIPPEN-
VILLE–ELK TOWNSHIP VOLUNTEER
FIRE DEPARTMENT, Appellant.

Commonwealth Court of Pennsylvania.

Argued May 14, 1996.

Decided July 24, 1996.

Joseph E. Buckley, Jr., for Appellant.

Ralph L.S. Montana, for Appellee.

Before DOYLE and SMITH, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

The Ladies Auxiliary of the Shippenville–Elk Township Volunteer Fire Department (Auxiliary) appeals from an order of the Court of Common Pleas of Clarion County (trial court) affirming a decree nisi of August 15, 1995 ordering that all funds held in the name of the Auxiliary are the property of the Shippenville–Elk Township Volunteer Fire Department (Department). We affirm.

The Auxiliary is an unincorporated association, organized in 1961. The Auxiliary's original by-laws stated that the Auxiliary's objectives were social purposes and to aid the Department in any manner possible. The Auxiliary held its meetings and conducted activities, including-fund raising, in the Department's fire hall until the hall was sold in 1988. Subsequent to the hall's sale, the Auxiliary held its meetings in a restaurant.

In the 1970's, the Department began planning for the construction of a new fire hall. Prior to 1986 or 1987, the Department had originally presented the Auxiliary with plans for a new fire hall that would accommodate the Auxiliary's desire for a larger social hall and kitchen area. However, after some time had passed, the Department determined it could not proceed with those plans due to lack of money and parking. In 1991, a revised plan was drafted that did not meet the Auxiliary's expectations and the Auxiliary refused to donate money for the new construction. Consequently, the Department filed a complaint in equity against the Auxiliary seeking to obtain $68,217 in funds that the Auxiliary had collected.

The trial court found that the Auxiliary had raised funds by lottery, raffles, bake sales and bingo for the benefit of the Department. The trial court stressed that the Auxiliary had never been a separate entity from the Department, that funds were always raised under the guise of benefitting the Department and that the Auxiliary held itself out as the Auxiliary *of* the Department. Although the Auxiliary had at other times donated relatively small sums of money to other organizations, either with the Department's approval or without its objection, the great bulk of funds raised was turned over to the Department. The trial court concluded that the Department had established that the Auxiliary was part of the Department, that the Auxiliary held funds in a constructive trust for the benefit of the Department, and that the Auxiliary would be unjustly enriched if allowed to keep the funds at issue.

■ On appeal to this Court,[1] the Auxiliary claims that the trial court erred as a matter of law by finding that a constructive trust existed, by failing to find that the Department's action was barred by the doctrine of laches and by failing to determine that the Department had unclean hands. In addition, the Auxiliary claims that the trial court's opinion violates both the United States Constitution and the Pennsylvania Constitution.

In its opinion, the trial court determined that the Department was entitled to relief under either of two constructive trust theories. The first constructive trust theory applies where a confidential or fiduciary relationship exists between the parties. Citing the case of *Commonwealth by Kane v. Hilton,* 24 Pa.Cmwlth. 285, 355 A.2d 841 (1976), the trial court stressed that where a fiduciary relationship exists between two parties, there is a presumption that a constructive trust exists. In *Kane,* this Court recognized that an agent who makes a profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal.

Pursuant to the latter theory, a constructive trust may arise where no fiduciary relationship exists. Under those circumstances, a constructive trust occurs where a person holding title to property is subject to another on the ground that he would be unjustly enriched if he were permitted to retain it. *Kimball v. Barr Township,* 249 Pa.Super.

---

1. Our scope of review of a final decree in equity is limited; the decree will not be disturbed unless it is not supported by the evidence or is demonstrably capricious. *Tredyffrin–Easttown School District v. Valley Forge Music Fair, Inc.,* 156 Pa.Cmwlth. 178, 627 A.2d 814, 818 n. 4 (1993), *petition for allowance of appeal denied,* 538 Pa. 638, 647 A.2d 513 (1993).

420, 378 A.2d 366 (1977). The trial court emphasized that under either theory the controlling factor when relief through imposition of a constructive trust is prayed for is not the specific intent of the parties to create a constructive trust but whether or not imposition of a constructive trust is necessary to prevent unjust enrichment. *DePaul v. DePaul,* 287 Pa.Super. 244, 429 A.2d 1192 (1981).

In its opinion, the trial court noted that the facts of the case "overwhelmingly" supported the conclusion that the Auxiliary was not a separate entity from the Department. The Auxiliary was created for the purpose of assisting the Department and the Auxiliary neither owns property nor has any other type of documentation that would establish a separate existence. Because the Auxiliary is not a separate entity, the trial court concluded that it would be unjustly enriched if it was allowed to retain the funds at issue.

The Auxiliary has challenged these conclusions arguing that there is no evidence that any type of agency or fiduciary relationship existed between the parties. To the contrary, the Auxiliary maintains that evidence in the record supports the conclusion that the Auxiliary was an independent, autonomous organization. The Auxiliary argues it is entitled to keep the money that it raised and spend it as the Auxiliary sees fit. Furthermore, the Auxiliary contends it will not be unjustly enriched because it will be keeping money that belongs to the *Auxiliary,* not the Department.

■ Based on our review of the record, we conclude that the trial court did not err when it determined that the Auxiliary was not a distinct entity from the Department. Clearly, the evidence in the record establishes that the Auxiliary did not have an existence separate and apart from the Department. The Auxiliary was created to assist the Department; it held lotteries, bake sales and bingo to raise funds for the Department and held itself out as a part of the Department. In light of these facts, we find no error in the trial court's conclusion that a fiduciary relationship existed between the parties and that keeping the funds would constitute unjust enrichment.

The Auxiliary also contends that the trial court erred when it rejected the Auxiliary's laches defense. The Auxiliary argues that on prior occasions, it had refused to provide the Department with funds when requested to do so. In essence, the Auxiliary argues that because the Department did not file an equitable action when the Auxiliary first refused to provide it funds, it may not bring such an action at this point in time.

■ In *Class of Two Hundred Administrative Faculty Members v. Scanlon,* 502 Pa. 275, 279, 466 A.2d 103, 105 (1983), the Pennsylvania Supreme Court discussed the equitable doctrine of laches stating:

'The application of the equitable doctrine of laches does not depend upon the fact that a definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice.' *Wilson v. King of Prussia Enterprises, Inc.,* 422 Pa. 128, 133, 221 A.2d 123, 126 (1966).... The prejudice required is established where, for example, witnesses die or become unavailable, records are lost or destroyed, and changes in position occur due to the anticipation that a party will not pursue a particular claim.... Thus, it is clear that the application of the defense of laches requires not only an unjustifiable delay, but also that the opposing party's position or rights be prejudiced as a result of that delay. (Citations omitted.)

■ Contrary to the Auxiliary's assertions, nothing in the record supports the determination that the Department inexcusably delayed its filing of this action. We are inclined to agree with the trial court's conclusion that the Department's cause of action accrued when the Auxiliary refused to turn over the funds in 1991. Undoubtedly, there was no reason for the Department to have brought suit prior to that time.

More importantly, we note that the Auxiliary's laches defense centers entirely on the Department's failure to bring suit in what the Auxiliary perceives to be an acceptable period of time. The Auxiliary has not alleged, and the record does not indicate, that

the Auxiliary suffered any type of prejudice from the Department's purported delay in bringing this equity action. Without a showing of prejudice, the defense of laches cannot be exercised.

In the same vein, the Auxiliary claims that the trial court erred as a matter of law when it refused to find that the Department had unclean hands. A party seeking equitable relief must come before the court with clean hands. *Mudd v. Nosker Lumber, Inc.*, 443 Pa.Super. 483, 662 A.2d 660 (1995). One guilty of wrongdoing should be denied access to the court. *Id.* For the doctrine of unclean hands to apply, the conduct at issue must change the equitable relationship of the parties. *Goebel Brewing Company v. Esslingers, Inc.*, 373 Pa. 334, 95 A.2d 523 (1953).

The Auxiliary contends that evidence in the record reflects instances of intimidation, threats and harassment that constitute unclean hands and should bar the Department's equity action. The Auxiliary maintains that this behavior affected the relationship between the parties because members of the Auxiliary became fearful of members of the Department. After reviewing pertinent portions of the record, we conclude that the trial court correctly found that the doctrine of unclean hands is not applicable to the present case. Although members of the Auxiliary may have been frightened by the Department's purported conduct, the equitable relationship between the parties was not affected to such an extent that the Auxiliary was placed at a disadvantage when it entered equity court. Thus, the doctrine of unclean hands does not apply.

Finally, the Auxiliary claims that the trial court's opinion violates both the Fourteenth Amendment to the United States Constitution and the Pennsylvania Constitution's prohibition of discrimination based on sex[2] because it discriminates against women by perpetuating stereotypes and improperly classifying the Auxiliary based on the gender of its members. We find these claims to be wholly unsupported by the record. The trial court's opinion reflects a well-reasoned application of the law to the facts presented and any claims of discrimination are meritless.

Accordingly, the order of the trial court is affirmed.

### ORDER

NOW, July 24, 1996, the order of the Court of Common Pleas of Clarion County is hereby affirmed.

SMITH, J., dissents.

---

2. Article I, Section 28 of the Pennsylvania Constitution.