755 A.2d 1267

Franklin E. SKEPTON, Joseph Bozzelli, Individually and t/a J.B. Plumbing Company and Dual Temp Co., Inc.,

v.

BOROUGH OF WILSON.

Appeal of Franklin E. Skepton, Joseph Bozzelli, Individually and t/a J.B. Plumbing Company (at 230 M.D. Appeal Dkt.1999).

Appeal of Dual Temp Co., Inc. (at 231 M.D. Appeal Docket, 1999).

Supreme Court of Pennsylvania.

Submitted Jan. 31, 2000.

Decided July 20, 2000.

Reconsideration Denied Sept. 5, 2000.

346

Joseph F. Leeson, Jr., Leeson Leeson & Leeson, Bethlehem, for Franklin E. Skepton and Joseph Bozzelli.

Dennis A. DeEsch, Minotti & DeEsch, Easton, for Borough of Wilson.

Robert A. Alpert, McCarthy Anewalt & Alpert, Allentown, for Dual Temp Co., Inc.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

CAPPY, Justice.[1]

Franklin E. Skepton ("Skepton"), Joseph Bozzelli, t/a J.B. Plumbing Company ("Bozzelli") and Dual Temp. Co. Inc. ("Dual Temp") (collectively, the "Contractors") appeal from the order of the Commonwealth Court. The Commonwealth Court concluded that the Contractors were not entitled to a refund of construction permit fees paid to the Borough of Wilson ("Borough") even though the ordinances and resolution pursuant to which the permit fees were collected were found

1. This opinion was reassigned to this author.

to be unlawful and unenforceable. For the reasons that follow, we reverse the order of the Commonwealth Court.

The Contractors entered into contracts with the Wilson Area School District ("School District") for the construction of a new high school. In order to begin their work, three local ordinances and a resolution imposed upon the Contractors permit fees, ostensibly for the purpose of regulating and inspecting the construction of the high school. These fees are designed for the purpose of reimbursing the municipality for the necessary expense of enforcing and administering oversight or control of the construction project. In this case, the fees amounted to approximately ten percent of each Contractor's bid or contract price with the School District to the Borough. The Contractors paid the permit fees, but did so under protest.

On May 27, 1992, Skepton, as general contractor, had applied to the Borough for the issuance of a building permit to construct the school. The Borough notified Skepton that the cost of a construction permit, under the applicable Borough ordinance and resolution, totaled $88,838.00, based on Skepton's estimated construction cost of $8,883,375.00 for the project. Likewise, Dual Temp, as the supplier and installer of the heating, ventilation, and cooling equipment, entered into a contract for its work in the amount of $2,201,621.00. Pursuant to the applicable ordinance and resolution, Dual Temp paid a permit fee of $22,021.00 based on its contract price of $2,201,-621.00. Finally, Bozzelli, as the plumbing contractor, and pursuant to the applicable ordinance and resolution, paid a permit fee of $9,120.00 based on its contract price of $890,-000.00.

While it was the Contractors that paid the permit fees to the Borough, the cost of the permit fees were incorporated into their bids or their contracts with the School District. Thus, at least indirectly, it was the School District that was the ultimate source of the permit fee monies paid to the Borough.

The Contractors each filed a complaint in the Court of Common Pleas of Northhampton County to pursue their contention that the ordinances and resolution, which authorized the permit fees, were invalid. The matters were consolidated and proceeded on a stipulation of facts pursuant to Pennsylvania Rule of Civil Procedure 1038.1 and on submitted briefs. On August 6, 1997, the trial court issued findings of facts and conclusions of law finding for the Contractors. Specifically, the trial court concluded that the ordinances and the resolution violated the Borough Code, 53 P.S. § 46202, because the fees imposed were primarily for the purpose of raising revenue and were grossly disproportionate to any costs incurred by the Borough. In fact, the documented expenses incurred by the Borough in enforcing the ordinances for the construction project totaled only $1,234.00, or approximately $\frac{1}{100}$th of the fees imposed by the Borough. Accordingly, the trial court found that the ordinances and resolution could not be enforced and the Contractors were entitled to a full refund of the monies paid to the Borough.

On appeal, the Commonwealth Court affirmed that part of the trial court's order which found that the ordinances and resolution were void and unenforceable. However, contrary to the trial court, the Commonwealth Court determined that the Contractors were not entitled to a refund of the improperly collected fees.

We granted allocatur to review the sole issue of whether a municipality must refund permit fees paid to it pursuant to ordinances that are subsequently held to be invalid and unenforceable.[2,3]

2. We note that the issue of whether the lower courts properly determined that the fees were disproportionate, and thus, invalid, is not before us. Thus, for purposes of this opinion we assume, *arguendo*, that the ordinances and resolution are invalid.

3. Our standard of review of in this matter is whether the trial court abused its discretion, committed an error of law, or rendered a decision unsupported by the evidence. *Glenn Johnston, Inc. v. Department of Revenue*, 556 Pa. 22, 726 A.2d 384, 385 n. 1 (1999). As our inquiry regarding the Contractors' right to a refund deals with an error of law,

The Commonwealth Court in addressing this issue first determined that the Contractors were not entitled to a refund because they failed to file a written complaint and verified claim pursuant to section 5566 of the Local Tax Collection Law. 72 P.S. §§ 5566b–5566c. Furthermore, the Commonwealth Court found that because the Contractors had included the relevant fee expenditures in their bids and had been reimbursed this amount by the School District, the Contractors had suffered no injury, and to order a refund would be to grant them a windfall. We will address these bases for denying a refund seriatim.

■ Review of the record in this case makes clear that during the litigation of this matter the Borough never raised the validity of the vehicle by which the Contractors sought a refund. The Borough failed to object to the type of claim made at any stage of the proceedings. Furthermore, the Borough made no argument on this issue either at trial or before the Commonwealth Court. Finally, there were no findings of fact on the type of claim asserted and whether it satisfied the mandates of § 5566b. Thus, because the Borough never contested the validity of the Contractors' refund claim, we find that the Commonwealth Court inappropriately injected this issue into the matter sub judice and reject this as a basis to deny the Contractors a refund. *Knarr v. Erie Insurance Exchange*, 555 Pa. 211, 723 A.2d 664, 666 (1999); *Department of Transportation v. Boros*, 533 Pa. 214, 620 A.2d 1139, 1142–43 (1993).

We turn now to the issue of whether the Commonwealth Court erred in finding that the Contractors were not entitled to a refund because they would have received a windfall. At its core, resolution of this issue is a matter of statutory construction.

■ It is a cardinal rule of statutory construction that if the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of

our scope of review is plenary. *Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

pursuing its spirit. 1 Pa.C.S. § 1921. Moreover, provisions of a statute dealing with the imposition of taxes shall be strictly construed. 1 Pa.C.S. § 1928. "[A] taxing statute must be construed most strongly and strictly against the government, and if there is a reasonable doubt as to its construction or application to a particular case, the doubt must be resolved in favor of the taxpayer." *Commonwealth v. High Welding Co.,* 428 Pa. 545, 239 A.2d 377, 379 (1968) (citations omitted). Thus, it is in light of these controlling principles that we must view this matter.

As noted by the Commonwealth Court, the Local Tax Collection Law provides the statutory remedy by which an individual may obtain a refund of monies paid to a political subdivision to which that entity is not entitled. As this case directly implicates the Local Tax Collection Law, our analysis naturally centers on the words of the statute.

The Local Tax Collection Law provides, in relevant part, that:

(a) Whenever any person or corporation of this Commonwealth has paid or caused to be paid, or hereafter pays or causes to be paid, into the treasury of any political subdivision, directly or indirectly, voluntarily or under protest, any taxes of any sort, license fees, penalties, fines or any other moneys to which the political subdivision is not legally entitled; then in such cases, the proper authorities of the political subdivision, upon the filing with them of a written and verified claim for the refund of payment, are hereby directed to make, out of budget appropriations of public funds, refund of such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled. Refunds of said moneys shall not be made, unless a written claim therefor is filed, with the political subdivision involved, within three years of payment thereof.

72 P.S. § 5566b.

The Commonwealth Court, without citation to statutory or case law, determined that because the Contractors had received money from the School District to cover the permit

fees, they had been compensated for the fees paid to the Borough, and thus, they were not entitled to a refund from the Borough.

We believe that this analysis is at odds with the clear language of the statute and the rule of statutory construction that mandates that taxing statutes must be strictly construed against the government. Here, the Borough imposed upon the Contractors fees to which the Borough was not legally entitled. Pursuant to the plain and unambiguous terms of the Local Tax Collection Law, the Contractors are entitled to a refund. In its analysis, the Commonwealth Court has stymied the statutory mandate of a refund and instead has engrafted upon the clear language of the statute a pre-condition, viz., the wronged taxpayer is entitled to a refund *only* if the taxpayer has not recouped its loss from some other entity. If so, the governmental unit does not have to return its improperly collected taxes. Simply stated, there is no pre-condition contained in the statute which denies a taxpayer a refund of wrongfully imposed taxes if that taxpayer has somehow mitigated or recovered its loss from another source. The Commonwealth Court erred in constructing such a statutory overlay.

This court's decision in *Girard Trust Co. v. Philadelphia City & County*, 359 Pa. 319, 59 A.2d 124, 127 (1948) strongly supports our interpretation of the statute. In *Girard,* personal property taxes were paid by the Girard Trust Company to the City of Philadelphia on money and securities held in a trust that was created for a Scottish insurance company. Part of the tax was levied upon bonds of corporations that, in the trust indentures creating the bond issue, agreed to reimburse any taxes imposed on the bonds. The trust company made a claim for a refund after it was determined that the trust was not subject to the tax. As to the refund, our court construed the very statute before us now and determined that the governmental unit which had illegally collected the tax was not entitled to a reduction in the amount of the refund because the taxpayer was reimbursed by the corporations which had is-

sued the bonds. Rather, it was the full amount of the tax paid to which the aggrieved taxpayer was entitled as a refund.

Thus, our court soundly rejected the same position taken by the Commonwealth Court, and urged by the Borough, in this case. Nor do we believe that the fact that this case involves a total reimbursement rather than a partial recovery of monies or that this case involves a contract providing services rather than a trust agreement is of distinguishing legal significance. In sum, if a taxpayer establishes that it paid taxes or fees to which the government is not entitled, the taxpayer is entitled to a refund.

Our decision today reflects the reality that in the normal course of doing business, a commercial enterprise will pass costs, such as permit fees, on to its customers. To preclude these commercial enterprises from the protection that a refund provides from illegal taxation because of its ability to pass that burden onto other shoulders is illogical. Such a policy would only encourage illegal taxing schemes aimed at commercial enterprises. This is because there will be no incentive for commercial enterprises to challenge the wrongfully collected taxes, and thus, no incentive for a municipality to discontinue abusive tax and fee collecting practices.

Finally, we also do not find persuasive the Borough's policy argument that equity demands a different result. Even assuming, *arguendo*, that equitable concerns would alter the plain meaning of the statute, it is not apparent that equity is on the side of the Borough. Even if the Contractors receive a complete windfall, the return of the illegally appropriated funds to the Contractors, rather than to the Borough, will be the lesser of two evils. The equities lie with such a result because the Borough should not be rewarded for the collection of revenues to which it was not entitled.[4]

4. In fact, the determination that the Contractors in this case will receive a windfall is not necessarily a foregone conclusion. Upon the Contractors receipt of a refund, the School District might very well initiate an action against the Contractors asserting, perhaps, a restitution interest in the funds. Thus, any purported windfall might very well be short lived.

■ Thus, we hold that pursuant to the Local Tax Collection Law, a taxpayer that establishes that it is entitled to a refund of monies paid to a political subdivision to which that entity was not legally entitled, is to receive a refund, regardless of whether the taxpayer was able to pass on the costs of the illegally collected taxes. The order of the Commonwealth Court is reversed, in part, and the case is remanded for proceedings consistent with this decision.

Justice NEWMAN files a dissenting opinion joined by Chief Justice FLAHERTY and Justice NIGRO.

NEWMAN, Justice, dissenting.

I join the Majority's Opinion to the extent that it holds that the Commonwealth Court erred in finding that the Contractors failed to submit a written claim to the Borough requesting a refund. During the litigation of this matter the parties at all times assumed that Contractors had filed a claim and the Borough was on notice of the Contractors' request for a refund. There were no findings of fact on this issue and no presentation of argument in either the trial court or Commonwealth Court. The Borough does not even raise this issue in its briefs before this Court. I thus agree that the Commonwealth Court inappropriately injected the issue into this matter. However, I dissent from the Majority's disposition because I agree with the Commonwealth Court that Contractors are not entitled to a refund since in reality, the School District, not Contractors, paid the excessive permit fees. Therefore, the Contractors are not really the person "aggrieved" and are not entitled to a refund pursuant to 72 P.S. § 5566b and 72 P.S. § 5566c.

While I am mindful of the arguments of the Majority, I reject the notion that such arguments lead to the conclusion that Contractors are entitled to a refund. At the outset, *Girard Trust Co.*, 359 Pa. 319, 59 A.2d 124 (Pa.1948) is inapposite to this case. It did not involve the situation where a commercial enterprise passed on the entire tax to its consumer, with the specific intent to make the consumer the

actual taxpayer. The trustee did not pass the entire amount of the tax to a consumer and had suffered significant financial detriment in the payment of the erroneous tax. Thus, the Girard Trust was an aggrieved person entitled to a refund.

As set forth by the United States Supreme Court in upholding the propriety of an Internal Revenue Code provision that required a party to show that it had not passed a tax on to a consumer before issuing a refund:

> if (the party) has shifted the burden to the purchasers, they and not he have been the actual sufferers and are the real parties in interest...

*United States v. Jefferson Electric Mfg. Co.*, 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859 (1934). Consequently, a commercial enterprise that has passed on the cost of the tax to its consumers would not be entitled to a refund for its coffers. *See also, McKesson Corporation v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 47, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990)(Supreme Court recognized continuing validity of *Jefferson Electric* in tax assessment matters that are based on actions in assumpsit.)

While the record shows that the Contractors wrote the actual check to the Borough, the School District paid the fees. In essence, it was the School District who was the taxpayer, not the Contractors. Accordingly, the Contractors are not the proper party to receive the refund. While this concept of disallowing a refund to a commercial entity where the de facto taxpayer is an end consumer appears to be one of first impression in this Court, the Commonwealth Court has applied it in several contexts.

For instance in *Eglin's 30* [th] *Street Garage Corporation v. Tax Review Board of Philadelphia*, 11 Pa.Cmwlth. 365, 314 A.2d 543 (1974) the City of Philadelphia had enacted an ordinance that imposed a tax of ten percent on the gross receipts of all transactions in public parking lots within the City of Philadelphia. Eglin, an owner and operator of a parking lot adjacent to a train station, challenged the taxes as applied to him because the lot did not meet the definition of a

public parking lot. He thus requested a refund of the taxes paid. The Commonwealth Court refused to award a refund to Eglin because:

> every cent of the $67,464.34 which Eglin now seeks to have refunded to it was paid to Eglin by its parking patrons specifically for taxes. Eglin gives no indication here of any intent to right the alleged wrong which has been done to its customers by arranging for returning any refund obtained from the City to them. *Eglin simply seeks a windfall for itself.* As between Eglin and the City of Philadelphia, the equity of Eglin is no greater than that of the City, and we will not accede to Eglin's claim for the money since it was only a conduit for collecting money for the City from those members of the public using Eglin's facilities.

314 A.2d at 544 (citing *Travel Industries of Kansas, Inc. v. United States of America,* 425 F.2d 1297 (10th Cir.1970))(emphasis added). Also in *Tredyffrin–Easttown School District v. Valley Forge Music Fair,* 156 Pa.Cmwlth. 178, 627 A.2d 814 (1993) the Commonwealth Court held that where Valley Forge Music Fair (Music Fair), a producer of an amusement facility, collected and was responsible for remitting a tax imposed on patrons of the Music Fair, the "taxpayer" eligible for any refund was the patron, not the amusement producer. 627 A.2d at 819. Thus, while the Commonwealth Court found that the municipality had violated equal protection for selectively enforcing the tax on Music Fair patrons, it affirmed the trial court's refusal to grant the refund directly to the Music Fair because it would receive a windfall since it was the patrons, not the Music Fair, who had paid the tax. 627 A.2d at 822.[1] *See also, Tillis v. City of Branson,* 975 S.W.2d 949 (Mo.Ct. App.1998) (amusement owner not entitled to refund where she passed the tax on to patrons; any refund would act as windfall to owner); *United States v. State of Colorado,* 666 F.Supp. 1479 (D.Colo.1987)(applying principles of restitution, district court refused to award refund of gas taxes where tax had been passed on to consumers.)

---

**1.** The trial court ordered the refund to be placed in trust to be used for children's education at the Music Fair.

I find these authorities persuasive. Contractors have made no showing that they intend to return the refund to the School District, who actually paid the fee. Instead, they seek a windfall for themselves. Accordingly, I would hold that Contractors have suffered no injury in fact, are not the proper parties to receive the refund and are not a person aggrieved pursuant to 72 P.S. § 5566c. I would therefore affirm the Order of the Commonwealth Court.

Chief Justice FLAHERTY and Justice NIGRO join this Dissenting Opinion.