# Bowman v. Berks County Board of Assessment Appeals

C.P. of Berks County, no. 01-6801.

*Jerry R. Richwine,* for appellants.
*Patricia C. Hassinger,* for appellee.

LASH, *J.,* December 20, 2001—The appellants, Richard C. Bowman and Judith A. Bowman (taxpayers), have appealed from the decision of the Berks County Board of Assessment Appeals, directing a rollback from the preferential use assessment to full market value assessment of taxpayers' real estate, pursuant to Pennsylvania Farmland and Forest Land Assessment Act of 1974 (Act 319, commonly known as the Clean and Green Act), 72 P.S. §5490.1 et seq. Pursuant to 72 P.S. §5350(c), the appeal pertains to the rollback from preferential use assessment to full market value for tax years 1995 through 2001. Trial was held on December 19, 2001. The court makes the following findings:

## I. FINDINGS OF FACT

(1) Appellants are Richard C. Bowman and Judith A. Bowman, who reside at R.D. #6, Box 507, Sinking Spring, Berks County, Pennsylvania 19608.

(2) Appellee is the Berks County Board of Assessment Appeals, whose address is Berks County Services Cen-

ter, Third Floor, 633 Court Street, Reading, Berks County, Pennsylvania 19601.

(3) On August 30, 1976, taxpayers purchased a tract of property, consisting of 39 acres and 63 perches in Cumru Township, Berks County, Pennsylvania (subject tract).

(4) Thirty-nine acres and 63 perches equates to 39.394 acres.

(5) The subject tract has a tax parcel number of 39-438515-52-5856, and is located in the Governor Mifflin School District, Berks County, Pennsylvania.

(6) Upon the subject tract, taxpayers' constructed a home, a pool, a barn and several other outbuildings, and kept livestock on the property. The property predominately consisted of woodland and some pasture area.

(7) On or about April 17, 1993, taxpayers applied for and were granted preferential assessment for their property under the Clean and Green Act. One acre of the subject tract was designated as home site and 38 acres and 63 perches were designated as forest.

(8) Taxpayers' entire property was accepted into the Clean and Green program for the calendar year 1994 and thereafter.

(9) In May 2000, the Pennsylvania Department of Transportation condemned .019 acre of taxpayers' land for use in its Route 222 section II project. Accordingly, the entire tract subject to preferential assessment was now 39.285 acres.

(10) At approximately the same time, PennDOT also condemned a property nearby the subject tract, property belonging to the mother and brother of Mrs. Bowman (the Rohrbachers).

(11) PennDOT also condemned nearby property belonging to Eugene Steffy and Edna C. Steffy.

(12) The Steffys tend to taxpayers' livestock when Mr. Bowman is out of town performing his job as a truck driver.

(13) It was important to taxpayers for the Rohrbachers to live close to them due to the advanced age of Mrs. Rohrbacher, and also important for the Steffys to live close to taxpayers so that Mr. Steffy could continue to tend to the livestock.

(14) To accommodate the Rohrbachers and the Steffys, taxpayers retained the services of John W. Hoffert, professional land surveyor, to prepare a subdivision plan and to provide for the creation of two lots, one of which would be gifted to the Rohrbachers and one which would be sold to the Steffys.

(15) A final plan of the Bowman subdivision, as approved by Cumru Township, was recorded in plan book 246, page 45.

(16) The aforesaid subdivision plan set forth a net two-acre lot for the Steffys and a net two-acre lot for the Rohrbachers.

(17) On November 10, 2000, taxpayers sold a two-acre lot to the Steffys for $30,000. The Steffys subsequently constructed a home on that lot.

(18) The Steffy deed transfer prompted the Berks County Assessment Office to send a letter on January 9, 2001, to taxpayers, informing them that the two acres were no longer eligible for a Clean and Green assessment and had been removed from the program.

(19) On January 2, 2001, taxpayers conveyed a two-acre lot to Michael Rohrbacher as a gift. The Rohrbachers then constructed a home on that lot.

(20) On February 28, 2001, the Berks County Assessment Office informed taxpayers by written notice that more than 10 percent of the total acreage had been sold off from the subject tract and that a Clean and Green breach had occurred.

(21) The notice sent on February 28, 2001, by the Berks County Assessment Office did not provide any language setting forth that the taxpayers were entitled to a hearing or that there could be an opportunity for a hearing under section 5490.9 of the Clean and Green Act.

(22) The assessment office then removed the entire subject tract of taxpayers from the Clean and Green program and assessed the tax rollback penalty against taxpayers in the amount of $21,013.63.

(23) On April 6, 2001, taxpayers filed a Clean and Green Assessment Appeal.

(24) A hearing was held on the appeal before the Berks County Board of Assessment Appeals on May 21, 2001.

(25) By letter dated June 21, 2001, the board informed taxpayers of its decision to uphold the Clean and Green breach.

(26) On July 11, 2001, taxpayers filed the within appeal to common pleas court.

## II. DISCUSSION

Taxpayers raise two issues. First, they contend that they are in compliance with the Clean and Green Act. Secondly, they contend that the notice sent to them by

the Berks County Assessment Office on February 28, 2001, was deficient in that it failed to advise taxpayers that they could request a hearing on the determination by the tax assessment office that a Clean and Green breach had occurred.

For reasons set forth herein, this court agrees with taxpayers and shall order the reinstatement of the preferential assessment on taxpayers' tract of land.

The dispute giving rise to the claimed breach centers around the two conveyances made by taxpayers in successive years. The board claims that these two conveyances were improper split-offs, subjecting taxpayers to liability for payment of rollback taxes.

The pertinent section of the Clean and Green Act is 72 P.S. §5490.6(a.1)(1)(i), which states as follows:

"(a.1) (1) The split-off of a part of land which is subject to preferential assessment under this Act shall subject the land so split off and the entire tract from which the land was split off to rollback taxes as set forth in section 5490.5(a). The landowner changing the use of the land to one inconsistent with this Act shall be liable for payment of rollback taxes . . . . Rollback taxes under section 5490.5(a) shall not be due if one of the following provisions applies:

"(i) The tract split off does not exceed two acres annually, . . . the tract split off is used . . . for the construction of a residential dwelling to be occupied by the person to whom the land is conveyed; and the total tract or tracts so split off do not exceed the lesser of 10 acres or 10 percent of the entire tract subject to preferential assessment."

Taxpayers contend that they are in compliance, as they meet all the conditions contained in sub (i). Sub (i) contains three conditions, all of which must be met by taxpayers. The first two conditions, that the tract split off does not exceed two acres annually and that the tract split off is used for the construction of a residential dwelling to be occupied by the person to whom the land is conveyed, are conceded by the board to have been met by taxpayers. The board, however, contends, that taxpayers cannot rely on sub (i) because the two conveyances, totaling four acres, exceed 10 percent of the total acreage of the subject tract and that, therefore, the third condition of sub (i) was not met.

Taxpayers argue that this 10 percent requirement relates to 10 percent of the size of the tract at the time of the split off. They contend that the tract size, after removal of the .109 acreage for the PennDOT condemnation, totaled 39.285 acres. The first split-off occurring on November 10, 2000, was a two-acre split off from the 39.285 acres, less than 10 percent. The second conveyance, occurring on January 2, 2001, also of two acres, was two acres from 37.285 acres, also less than 10 percent. Taxpayers, therefore, argue that they are in compliance.

This court disagrees with taxpayers' interpretation. The 10 percent condition must be read in the cumulative sense. When considering whether 10 percent of the original tract was split off, both conveyances must be added together. As such, the conveyances, totaling four acres, exceed 10 percent of the 39.285 acres.

The language of the third condition requires this interpretation. Note that the condition requires that the split-

off cannot "exceed the lesser of 10 acres or 10 percent of the entire tract subject to preferential assessment." The legislature would not have included the requirement that the split-off cannot exceed 10 acres if the split-off were not to be considered in the aggregate, because the first condition requires that only two acres can be split off annually. The 10 percent requirement must be read in conjunction with the 10-acre requirement and be held to be in the same context. Taxpayers' first argument, therefore, fails.

Regarding notice, taxpayers argue that the county assessment office did not comply with 72 P.S. §5490.3 (d)(2) in that taxpayers were not provided with notice of an opportunity for a hearing. This section provides as follows:

"(d) The county Board of Assessment Appeals may not terminate preferential assessment of land previously determined by the board to qualify for preferential assessment without:

"(2) Written notice under section 5490.5 from the county assessor to the landowner that preferential assessment is to be terminated, stating the reason for such termination and the opportunity for a hearing under section 5490.9."

The notice sent out by the assessment office on February 28, 2001, is clearly not in compliance with section 3(d)(2) of the Clean and Green Act. There is no language whatsoever setting forth that the taxpayers can challenge the ruling of the assessment office by filing an appeal and requesting a hearing.

The board contends that taxpayers should not be permitted to rely on this section, even if the notice was de-

ficient, because taxpayers have suffered no prejudice. It is true that taxpayers were not affected by the lack of notice, for they followed the proper procedures and timely perfected their appeal.

This court disagrees. The failure of the assessment office to provide notice to taxpayers of an opportunity for a hearing is fatal to the board's position. To hold otherwise would permit the assessment office to disregard the plain language of the provision. Mere lack of prejudice does not adequately address the concerns here. Although taxpayers suffered no harm in this case, ostensibly because they sought legal counsel in a timely manner, this lack of notice had the potential to cause serious harm. The taxpayer who is not aware of his opportunity for a hearing may accept without question the notice from the assessment office when, in fact, he may have legitimate issues to raise on appeal. This could also result in late filings, which although potentially reviewable by the court through an application for leave to file nunc pro tunc, nevertheless contravenes the important concerns of prompt resolution of disputes and the finality of decisions. To agree to a case by case review of the sufficiency of a notice based on whether the aggrieved party suffered any harm would be improper. The assessment office must be held accountable for its failure to give notice.

This rationale is further supported by the tone of the provision itself, which is couched in mandatory terms. The board *may not terminate* preferential assessment of land without the required written notice. As stated in the case of *Skepton v. Borough of Wilson,* 562 Pa. 344, 349-50, 755 A.2d 1267, 1270 (2000):

"It is a cardinal rule of statutory construction that if the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. §1921. Moreover, provisions of a statute dealing with the imposition of taxes shall be strictly construed. 1 Pa.C.S. §1928. '[A] taxing statute must be construed most strongly and strictly against the government, and if there is a reasonable doubt as to its construction or application to a particular case, the doubt must be resolved in favor of the taxpayer.' "

The taxpayers have sustained their burden of showing that the Board of Assessment Appeals should not have terminated the preferential assessment of land in this case. Accordingly, we enter the following order.

## ORDER

And now, December 20, 2001, upon consideration of the briefs of the parties and after trial held, this court sustains the appeal of Richard C. Bowman and Judith A. Bowman. The preferential assessment of land owned by the appellants located in Cumru Township, Berks County, Pennsylvania, and consisting of 39.285 acres, shall be reinstated for calendar year 2001. It is further ordered that appellants, Richard C. Bowman and Judith A. Bowman, shall not owe any tax rollback penalty or interest thereon for calendar years 1995 through 2001. The lien entered by Berks County Board of Assessment Appeals against the land of appellants is hereby released, discharged and extinguished. Notice of this order shall be sent by appellee, Berks County Board of Assessment Appeals, to the Berks County Tax Claim Bureau, Cumru Township, and Governor Mifflin School District.