**PIZZUTTI, INC., Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 5, 2009.

Decided June 8, 2009.

Frederick D. Rapone, Jr., Pittsburgh, for petitioner.

Karen M. Gard, Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: LEAVITT, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Pizzutti, Inc. petitions for review of an order of the Board of Finance and Revenue (Board) sustaining the Department of Revenue's (Department) assessment issued for the sales tax collected, but not remitted, by another corporation, Le Perroquet, Inc. The Board concluded that Pizzutti, Inc. could be held liable for these unpaid sales taxes because it was using the restaurant equipment of Le Perroquet, Inc. In this case, we consider whether Section 1403 of The Fiscal Code[1] authorizes a bulk sales assessment against a taxpayer using the assets of another cor-

1. Section 1403 of The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. § 1403, commonly known as the bulk sale statute.

porate taxpayer that is delinquent in its taxes.

The facts of this matter are not in dispute, having been established by joint stipulation of the parties. "Le Perroquet" was a restaurant in Pittsburgh that did business from October 1, 2003, to April 14, 2005, and was operated by Le Perroquet, Inc. Alain Pizzutti was the sole shareholder and corporate officer of Le Perroquet, Inc. In early 2005, after a contentious divorce, Alain Pizzutti handed his ex-wife, Susan Pizzutti, the keys to the building where "Le Perroquet" was located and informed her that if she wanted to support their two children, she could operate the restaurant. Up to this point, Susan Pizzutti's involvement with the restaurant had been minimal. Susan Pizzutti tendered an offer to purchase Le Perroquet, Inc., but Alain Pizzutti did not respond. Shortly after Susan Pizzutti began to operate "Le Perroquet," she discovered that the restaurant owed approximately $240,000 to various creditors. The debts relevant to this case included Le Perroquet, Inc.'s debt of $18,000 in back rent; its debt of $40,000 to National City Bank, which had a security interest in all of Le Perroquet, Inc.'s assets; and its debt of $18,939.84 to the Commonwealth for sales tax that had been collected but not remitted.

On April 14, 2005, the Department revoked Le Perroquet, Inc.'s sales tax license. It also commenced an enforcement action against Le Perroquet, Inc., the pleading for which it served on Susan Pizzutti. "Le Perroquet" closed its doors.

On April 21, 2005, Susan Pizzutti incorporated Pizzutti, Inc. and obtained a sales tax license. Pizzutti, Inc. negotiated a lease with the owner of the building formerly occupied by "Le Perroquet" for a term from July 1, 2005, to December 31, 2006, "in its present 'AS IS, WHERE IS' condition." Lease Agreement, ¶ 1, Commonwealth Brief, Appendix A, Exhibit B. Pizzutti, Inc. then opened a restaurant called "Pizzutti's." Pizzutti, Inc. uses all the equipment, furniture, and other tangible assets owned by Le Perroquet, Inc., which, as noted, are encumbered by National City Bank's lien, which lien remains viable until March 4, 2012. Pizzutti, Inc. did not pay Le Perroquet, Inc. for the use of its equipment, and there has been no formalized transfer of the assets from Le Perroquet, Inc. to Pizzutti, Inc. Stipulation of Fact No. 16.

On April 25, 2006, the Department issued a bulk sale assessment against Pizzutti, Inc. for sales tax in the amount of $18,939.84, a penalty of $4,338.54 and interest of $1,951.49 for a total of $25,229.87. The assessment seeks to recover from Pizzutti, Inc. the sales tax collected, but not remitted, by Le Perroquet, Inc. for the period October 1, 2003, through December 31, 2004.

Pizzutti, Inc. filed a petition for review with the Board of Appeals, and the Board requested evidence that the assets of Le Perroquet, Inc. had not been transferred to Pizzutti, Inc. By affidavit from Susan Pizzutti, its sole shareholder and officer, Pizzutti, Inc. attested to the fact that there had been no transfer of assets from Le Perroquet, Inc. to Pizzutti, Inc. The Board concluded that this affidavit was inadequate and denied the petition. The Board of Finance and Revenue affirmed, concluding that Pizzutti, Inc.'s possession and use of the assets of Le Perroquet, Inc. constituted a transfer, thereby subjecting Pizzutti, Inc. to the bulk sale assessment for unpaid taxes of Le Perroquet, Inc. The present appeal followed.[2]

---

**2.** Our review on appeal is *de novo* and is based on either a record created before this court or stipulated facts. PA. R.A.P. 1571;

Pizzutti, Inc. contends that the Board misconstrued the bulk sale provisions of Section 1403 of The Fiscal Code by concluding that mere "use" and "possession" of another corporation's assets is sufficient to impose bulk sale tax liability upon the user. It contends that Section 1403 imposes tax liability only on a "purchaser," which is defined to be "[a]ny person who acquires, *for a consideration*," tangible personal property. Section 201 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7201 (emphasis added).[3] Because Pizzutti, Inc. is not a "purchaser" of Le Perroquet, Inc's assets, it argues that the Department lacks the statutory authority to hold it liable for the unpaid taxes of Le Perroquet, Inc.

In response, the Department contends that the General Assembly's use of the terms "sale" *or* "transfer" in Section 1403 means that a "transfer" is something other than a "sale" and does not require consideration. In support, it directs the Court to the dictionary definition of the verb "transfer," which states, in relevant part, as follows:

> [T]o make over or negotiate the possession or control of (a right, title, or property) by a legal process *usually for a consideration;* ... the conveyance of right, title, or interest in either real or personal property from one person to another by sale, gift, or other process ...

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2427 (2002) (emphasis added). Accordingly, consideration is "usual," but it is not essential to a transfer. Indeed, a gift

can effect a transfer. The Department argues that Le Perroquet, Inc. transferred, or gifted, its equipment to Pizzutti, Inc. The gift included, in the Department's view, a responsibility for the unpaid taxes of Le Perroquet, Inc.

We begin our analysis with a review of the applicable statutory law. The Department issued its assessment to Pizzutti, Inc. under Section 240 of the Tax Reform Code of 1971, which states as follows:

> *A person* that sells or causes to be sold at auction, or *that sells or transfers in bulk, fifty-one per centum or more of any stock of goods, wares or merchandise of any kind,* fixtures, machinery, *equipment,* buildings or real estate, *involved in a business* for which the person is licensed or required to be licensed under the provisions of this article, or is liable for filing use tax returns in accordance with the provisions of this article, *shall be subject to the provisions of section 1403 of "The Fiscal Code."*

72 P.S. § 7240 (emphasis added). Thus, Section 240 of the Tax Reform Code of 1971 obligated Le Perroquet, Inc., a person alleged by the Department to have transferred 51 percent of its equipment, to comply with the terms of Section 1403 of The Fiscal Code.

In turn, Section 1403 of The Fiscal Code requires taxpayers looking to sell or transfer 51 percent of their assets to notify the Department and satisfy any outstanding tax obligations prior to the transfer. Specifically, Section 1403 states, in relevant part, as follows:

*Dechert LLP v. Commonwealth,* 922 A.2d 87, 88 n. 2 (Pa.Cmwlth.2007).

**3.** Section 201 more fully defines a "sale at retail" as:

> Any transfer, *for a consideration,* of the ownership, custody or possession of tangi-

> ble personal property, including the grant of a license to use or consume whether such transfer be absolute or conditional and by whatsoever means the same shall have been effected.

72 P.S. § 7201 (emphasis added).

*Every corporation, . . . which shall sell or transfer in bulk fifty-one per centum or more of any stock of goods, wares, or merchandise of any kind, fixtures, machinery, equipment, buildings, or real estate, shall give the Department of Revenue ten days' notice of the sale or transfer prior to the completion of the transfer of such property.* It shall also be the duty of every corporation, . . . to file all State tax reports with the Department of Revenue, to and including the date of such proposed transfer of property and pay all taxes due the Commonwealth to and including said date. *The seller or transferor shall present to the purchaser of such property a certificate from the Department of Revenue, showing that all State tax reports* have been filed and all State taxes paid to and including the date of the proposed transfer. *The failure of the purchaser to require this certificate shall render such purchaser liable to the Commonwealth for the unpaid taxes owing by the seller or transferer . . .*

72 P.S. § 1403 (emphasis added). Thus, before Le Perroquet, Inc. transferred its assets to Pizzutti, Inc., it was required: (1) to provide the Department with notice 10 days prior to transfer; (2) to file all state tax returns; and (3) to pay all taxes due. Le Perroquet, Inc. did not meet any of its obligations under Section 1403.

The Department argues that Section 1403 applies to a situation where a taxpayer gifts 51 percent or more of its tangible assets. This is logical, it argues, lest delinquent taxpayers gift assets to family members as a way to avoid the provisions of Section 1403. Indeed, the terms "transfer" and "transferor" were added to Sec-

tion 1403 in 1951 to address, perhaps, the Department's articulated concern. *See* Act of May 29, 1951, P.L. 508. We agree that a "transfer" includes gifts. Indeed, the notice requirements of Section 1403 give the Department the means to ensure that a donor's taxes are current before the gift transaction closes. However, the 1951 amendment does not answer the question of what sanctions may be imposed when the transferor, or donor, fails to follow the requirements of Section 1403.

Section 1403 obligates the transferor to give the *purchaser* a clearance certificate. Further, if the *purchaser* does not require the transferor to produce this certificate before closing, then the Department may pursue the *purchaser* for this bulk sale tax liability. A the purchaser is a term defined, as noted, as one who acquires personal property "for a consideration." Section 201 of the Tax Reform Code of 1971, 72 P.S. § 7201. The definition in the Tax Reform Code of 1971 is dispositive here because the Department's tax assessment against Pizzutti, Inc. was lodged under Section 240 of the Tax Reform Code of 1971. Section 1403 uses the term "purchaser" *three times*. By contrast, the word "user" or "transferee" does not appear. Thus, the plain language of Section 1403 imposes bulk sale liability for the unpaid taxes of the seller or transferor, only where the new owner of the transferred assets has acquired them by payment of consideration.[4]

■ The Department argues that the General Assembly could not possibly have meant that a donee could escape a bulk sale tax assessment. We disagree. The General Assembly could have used the term "user," "donee" or "recipient," but it

---

4. This lack of symmetry in Section 1403 of The Fiscal Code has been noted by commentators as far back as 1952, where it was "believed consideration is required of all as-

sets, including intangible property." LEIGHTON P. STRADLEY, I.H. KREKSTEIN, CORPORATE TAXATION AND PROCEDURE IN PENNSYLVANIA, § 300(B) (2d. ed.1952).

did not. Instead, the legislature used the defined term "purchaser," and this Court is not permitted to disregard the words of a statute under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921 ("[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). In addition, the General Assembly has directed that taxing statutes shall be strictly construed in favor of the taxpayer. 1 Pa.C.S. § 1928(b)(3) ("[a]ll provisions of a statute of the classes hereafter enumerated shall be strictly construed ... [p]rovisions imposing taxes.") All doubts about the meaning of a taxing statute must be construed against the government, as our Supreme Court has explained:

> [A] taxing statute must be construed most strongly and strictly against the government, and if there is a reasonable doubt as to its construction or application to a particular case, the doubt must be resolved in favor of the taxpayer.

*Skepton v. Borough of Wilson,* 562 Pa. 344, 350, 755 A.2d 1267, 1270 (2000) (quotation omitted). The Department's argument that "purchaser" signifies any "recipient" of assets requires that we disregard the statutory definition of "purchaser" as well as the above-cited statutory construction principles. This we cannot do. Because Pizzutti, Inc. is not a "purchaser" under Section 1403 of The Fiscal Code, the Department erred in assessing Pizzutti, Inc. with bulk sale liability of the unpaid sales tax of the putative seller, Le Perroquet, Inc.

Further, we do not accept the Department's premise that Le Perroquet, Inc. has transferred 51 percent of its assets to Pizzutti, Inc. There is no evidence of such a transfer, and there is no evidence that Pizzutti, Inc. has either title or right to these assets.

Le Perroquet, Inc.'s equipment is still located at the same building, subject to the Bank's security interest and to the possession and control of the landlord. Prior to negotiating its lease, Pizzutti, Inc. could have been evicted by the landlord, and it can still be dispossessed of the restaurant equipment by National City Bank, by the landlord, or even by Le Perroquet, Inc. The lease gave Pizzutti, Inc. the premises at 709 Bellefonte Street, "AS IS," suggesting the restaurant equipment is actually being leased to Pizzutti, Inc. by the landlord, not by Le Perroquet, Inc. Under the Department's reasoning, the bulk sale tax assessment could just as easily be imposed on the landlord. In sum, the evidence does not demonstrate a transfer of the restaurant equipment from Le Perroquet, Inc. to Pizzutti, Inc.

Indeed, these complexities and uncertainties about which person has the right to exercise control of Le Perroquet, Inc.'s restaurant equipment explain why the legislature has limited the bulk sale assessment remedy to the "purchaser" of the assets of a delinquent taxpayer. This limitation also makes sense in light of the Department's other remedies with respect to the unpaid taxes of Le Perroquet, Inc.

The sales tax collected for the period October 1, 2003, through December 31, 2004, and not remitted by Le Perroquet, Inc. is held in trust for the Commonwealth. The Commonwealth is authorized to proceed against the "person, his representatives and any person ... receiving any part of such fund without consideration." 72 P.S. § 7225.[5] The Department is au-

---

5. Section 225 of the Tax Reform Code of 1971 more fully provides:

All taxes collected by any person from purchasers in accordance with this article and all taxes collected by any person from pur-

thorized to file a lien on the trust in the appropriate county, which entitles the Commonwealth to a "super priority" ahead of all other liens other than those of the United States. Section 242(a), (d) of the Tax Reform Code of 1971, 72 P.S. § 7242(a), (d).[6] Finally, the Commonwealth is authorized to proceed criminally against the individual who collected the tax on behalf of the corporation and did not remit it, *i.e.*, Alain Pizzutti. *See* 18 Pa.C.S.

§ 4113.[7] These remedies appear adequate. In any case, the legislature has not provided the Department with the additional remedy of issuing a tax assessment to a person who merely uses the assets of a delinquent corporate taxpayer.

■ Finally, the Department argues that Pizzutti, Inc. should have pursued other options that would have kept the restaurant, "Le Perroquet," open but in a lawful manner. The Department contends that

chasers under color of this article which have not been properly refunded by such person to the purchaser shall constitute a trust fund for the Commonwealth, and such trust shall be enforceable against such person, his representatives and any person (other than a purchaser to whom a refund has been made properly) receiving any part of such fund without consideration, or knowing that the taxpayer is committing a breach of trust: Provided, however, That any person receiving payment of a lawful obligation of the taxpayer from such fund shall be presumed to have received the same in good faith and without any knowledge of the breach of trust. Any person, other than a taxpayer, against whom the department makes any claim under this section shall have the same right to petition and appeal as is given taxpayers by any provisions of this part.

72 P.S. § 7225.

6. Section 242(a) and (d) of the Tax Reform Code of 1971 provides in relevant part:

(a)If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, addition or penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the Commonwealth upon the property, both real and personal, of such person but only after same has been entered and docketed of record by the prothonotary of the county where such property is situated. The department may, at any time, transmit, to the prothonotaries of the respective counties, certified copies of all liens for taxes imposed by this act and penalties and interest. It shall be the duty of each prothonotary receiving the lien to enter and docket the same of record in his office, which lien shall be indexed as judgments

are now indexed. No prothonotary shall require, as a condition precedent to the entry of such liens, the payment of the costs incident thereto.

\* \* \*

(d)Except as hereinbefore provided in the distribution, voluntary or compulsory, in receivership, bankruptcy or otherwise, of the property or estate of any person, all taxes imposed by this article which are due and unpaid and are not collectible under the provisions of section 225 hereof, shall be paid from the first money available for distribution in priority to all other claims and liens, except in so far as the laws of the United States may give a prior claim to the Federal Government. Any person charged with the administration or distribution of any such property or estate, who shall violate the provisions of this section, shall be personally liable for any taxes imposed by this article, which are accrued and unpaid and are chargeable against the person whose property or estate is being administered or distributed.

72 P.S. § 7242(a), (d).

7. The Crimes Code provides as follows:

(a)Offense defined.—A person commits an offense if he applies or disposes of property that has been entrusted to him as a fiduciary, or property of the government or of a financial institution, in a manner which he knows is unlawful and involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted.

(b)Grading.—The offense is a misdemeanor of the second degree if the amount involved exceeds $50; otherwise it is a misdemeanor of the third degree.

18 Pa.C.S. § 4113.

Susan Pizzutti should have appealed the revocation of Le Perroquet, Inc.'s sales tax license or paid its outstanding taxes. The Department is wrong. First, Susan Pizzutti could not have entered an appeal on behalf of Le Perroquet, Inc., a corporation of which she was neither a shareholder nor officer. Second, the tax owing was a debt owed by her former husband's corporation, not by her corporation. Susan Pizzutti was no more liable for the debts of her former husband's corporation than was the landlord, who has actual possession of the assets, or National City Bank, which holds a security interest in the assets.[8]

For these reasons, the order of the Board of Finance and Revenue is reversed. The Chief Clerk is directed to enter judgment in favor of Pizzutti, Inc. and against the Commonwealth of Pennsylvania unless exceptions are filed within 30 days pursuant to PA. R.A.P. 1571(i).

### *ORDER*

AND NOW, this 8th day of June, 2009, the order of the Board of Finance and Revenue is hereby REVERSED and the Chief Clerk is directed to enter judgment in favor of Pizzutti, Inc. and against the Commonwealth of Pennsylvania unless exceptions are filed within 30 days pursuant to PA. R.A.P. 1571(i).

---

8. In the Dark Ages, the common law provided that the husband and wife were one, and that "one" was the husband. It does not improve this long-discarded principle of law by treating the wife's corporation and the husband's corporation as "one," that "one" being the wife's. The Department offered no evidence to pierce the corporate veil or otherwise disregard the corporate form of ownership here.